## CARTER, Respondent, v. BALDWIN, Appellant.

St. Louis Court of Appeals, May 10, 1904.

1. **AMENDMENTS.** Under section 657, Revised Statutes of 1899, a formal amendment to a petition, by leave of the court, may be made at any time before judgment.

2. ———: **Waiver.** By answering to a petition as amended, the defendant waives any error there may be in allowing an amendment.

3. **MASTER AND SERVANT: Vice Principal: Foreman.** The foreman of a squad of men working in a mine, who hired and discharged men and directed them where and how to work, was vice principal, notwithstanding the fact that he worked with the men and performed the same character and grade of labor.

4. ———: ———: ———: **Safe Place to Work.** It was the duty of such foreman to provide the men under his charge with as reasonably safe places to work as the nature of the employment would admit.

5. ———: **Safe Place to Work: Assumption of Risk.** Where a miner of experience, though only nineteen years of age, called the attention of the foreman under whom he worked, to a crevice indicating danger in a "slab" of mineral overhanging the drift where he was put to work, and the foreman assured him that it was safe and would not fall, he had a right to rely on the superior judgment of the foreman, notwithstanding he apprehended danger, and it could not be said as a matter of law that he assumed the risk of danger he apprehended, unless such danger was so glaring as to threaten immediate injury in case he obeyed the order.

6. ———: ———: ———. Where such employee knew of the crevice the evening before he was put to work and it remained in that condition over night without any perceptible change, it could not be said that the danger was so manifest as to threaten immediate injury, and, under those circumstances, whether he was guilty of contributory negligence, or assumed the risk incident to obeying the orders of the foreman, were questions of fact for the jury.

7. ———: ———: ———: **Jury Question.** Whether or not a servant assumed the risk incident to his employment is generally a question of fact for the jury. To authorize a court to say as a matter of law that the risk was assumed, the evidence must be all one way and to one effect, that is, the danger must be so open and glaring that it could not escape the observation of an ordinarily prudent man.

Appeal from Lawrence Circuit Court.—*Hon. Henry C. Pepper,* Judge.

Action for personal injuries, appeal from judgment in favor of plaintiff.

AFFIRMED.

*Edw. J. White* for appellant.

(1) The original and amended petitions of the plaintiff failed to allege facts sufficient to constitute a cause of action. 14 Enc. Pl. and Pr., p. 332 and cases cited; Bliss, Code Pleading (2 Ed.), sec. 211, p. 328; Dwyer v. Amer. Express Co., 55 Wis. 453; Railway v. Bouldin, 110 Ala. 185; 13 Enc. Pl. and Pr., pp. 907, 908

and cases cited; Pittsburg Coal Co. v. Peterson, 136 Ind. 398; Shaw v. Bambrick Con. Co., 77 S. W. 96; Aldrich v. Furnace Co., 78 Mo. 559; Watson v. K. & T. Coal Co., 52 Mo. App. 367; Boemer v. Lead Co., 69 Mo. App. 601. (2) The court erred in overruling the defendant's demurrer to the plaintiff's evidence and at the close of the whole case. The cases are numerous which hold that where a servant knows of a defect in a bank of earth or rock and is injured by its falling upon him, he can not recover from his employer. Petaja v. Aurora Min. Co., 32 L. R. A.435; Beckman v. Anheuser-Busch Co., 98 Mo. App. 561; Heald v. Wallace, 71 S. W. 80; Reiter v. Winona and C. Co., 75 N. W. 219; Welsh v. Bainard, 65 N. W. (Mich.) 667; Green v. West Union Company, 72 Fed. 250; Pederson v. Rushford, 42 N. W. 1063; Swanson v. LaFayette, 32 N. E. (Ind.) 1033; Brown v. Chattanooga Co., 47 S. W. 415; Griffin v. Ohio and C. Company, 24 N. E. 888; Meikle v. C. & A. Company, 79 N. W. 22; Naylor v. C. & N. W. Co., 11 N. W. 24. Nor can the plaintiff hide behind the order of the defendant's foreman, as, where the matters are as open to the servant as to the foreman, the former assumes the risk of obeying. Olson v. McMullen, 24 N. W. 318; Skidmore v. West Vir. Co., 23 S. E. 713; New Pittsburg C. & C. Co. v. Peterson, 35 N. E. 7. "A mere foreman or boss of a gang of men working in a mine employed in the same department of the business, and under a common head, is a fellow-servant with them whether he has or has not authority to hire and discharge the men under him." Alaska Gold Mining Co. v. Wheelan, 168 U. S. 85-88; 42 L. C. P. Co. Ed. 390. This rule, laid down by the United States Supreme Court is cited with approval by the Missouri Supreme Court in Grattis v. K. C. P. & G. Co., 153 Mo. 402. And this is the generally accepted rule, as to fellow-servants in a mine, in the majority of the mining states. McLean v. Blue Point Company, 51 Cal. 255; Collier v. Steinhart, 51 Cal. 116; Lehigh Valley Coal Co. v. Jones,

86 Pa. St. 432; Del Co. v. Carroll, 89 Pa. St. 374; Oaks
v. Moss, 165 U. S. 363; Grattis v. K. C. P. & G. Co., 153
Mo. 402.

*H. H. Bloss* for respondent.

(1) . Respondent's first contention to the effect that
the petition does not state a cause of action because of
the lack of a constitutive allegation seems to assume
without authority to support him, that if the original
petition were subject to that charge it could not be
amended. R. S. 1899, secs. 657 and 663. Besides the
respondent is not now in a position to take advantage of
the error of the court, if such was an error, for he an-
swered over to the amended petition and went to trial.
Barnard v. Mott, 89 Mo. App. 408; Liese v. Meyer, 143
Mo. 547; Ross v. Cleveland and Aurora M. L. Co., 162
Mo. 317.    (2)   In Missouri the foreman is the vice prin-
cipal even though he assumes to take on himself the role
of a laborer.   Hayworth v. Railroad, 94 Mo. App. 224;
Strode, Curator, etc. v. McConkey (K. C. Court of App.
not yet reported.) ; Larson v. Mining Co., 71 Mo. App.
518.    (3)   The following principles of law applicable
to the case in hand are settled by a long line of deci-
sions in this State, that is to say: "If the servant being
apprehensive of danger calls the foreman's attention to
it and is assured that it is safe and ordered to proceed
to work, he has a right to rely on the superior judgment
of the foreman and obey the order, unless the danger
is of such a glaring character that no reasonable, pru-
dent man would have obeyed the order in the same sit-
uation." Larson v. Mining Co., 71 Mo. App. 518; Hal-
iburton v. Railroad, 58 Mo. App. 27; Warner v. Rail-
way, 62 Mo. App. 190; Stephens v. Railroad, 96 Mo.
207; Lucy v. Hannibal Oil Co., 129 Mo. 32; Hammon v.
Central Coal and Coke Co., 156 Mo. 232. Even where
the servant has knowledge of the defect or dangerous
place to work, and has not been assured and allured

into the place of danger, this as a matter of law is not sufficient to defeat his recovery. Waldon v. Railroad, 93 Mo. App. 674; Compton v. Railroad, 82 Mo. App. 175; Smith v. Coal Co., 75 Mo. App. 177; Hamilton v. Mining Co., 108 Mo. 364; Shartel v. City of St. Joe, 104 Mo. 114; Cardwell v. Railroad, 90 Mo. App. 31; Minnier v. Sedalia, 167 Mo. 99; Herriman v. K. C. Star Co., 81 Mo. App. 124. (4) The master under such circumstances insures the safety of the employee, as against injury to which the assurance and order relate. Warner v. Railroad, 62 Mo. App. 191; Keegan v. Kavenough, 62 Mo. 230; Rowland v. Railroad, 20 Mo. App. 463; Cox v. Granite Co., 39 Mo. App. 424; Monahan v. Coal Co., 58 Mo. App. 68; Fogus v. Railway, 50 Mo. App. 259.

STATEMENT.

Plaintiff is a minor and sues by Miles Carter, his next friend. The material allegations of the petition on which the case was tried are as follows:

"That on the twenty-seventh day of August, 1902, the said minor was being employed by the defendant to work in defendant's mine about a mile east of the city of Aurora in Lawrence county, Missouri, located on the land owned by the Cleveland and Aurora Mineral Land Company, and commonly known as the Independent mine; that on the day mentioned the plaintiff with his colaborers was directed by defendant's foreman, Robert Gilmore, to work on the scaffold in defendant's mine in one of the drifts of said mine, at a depth of about ninety feet from the surface of the earth; that immediately in front of said scaffold and in close proximity thereto hanging in the roof of said drift was a large slab, that had some evidences of the fact that it was working loose; that it was apparent that if it should fall it would strike or cause the scaffold on which plaintiff and his colaborers were working and cause it

to fall, that said scaffold was of a height of thirty feet at least from the bottom of the drift, that on the morning in question the plaintiff and his colaborers having been ordered by the said foreman to work at a place in said mine, that it became necessary for them to stand on the top of said scaffold, after proceeding to the place where they had been ordered to work and observing the said slab overhanging the said drift called the foreman's attention thereto and asked him whether it was safe for them to work at the place he had ordered them, in view of said slab, that the said foreman negligently and carelessly assured the plaintiff and his colaborers that it was safe and ordered them to proceed to work; that the plaintiff on account of his youth and inexperience and the mature age and commanding position of defendant's foreman, relied on the assurances of the foreman and in obedience to his orders did proceed to work and while so engaged in the prosecution of the work assigned to him by said foreman, and while he was in every way complying with such orders and was entirely without fault or negligence on his part, the said slab came crushing down, tore through the scaffold and caused it to break and fall and threw plaintiff thirty feet or more to the bottom of the drift where he lit on a rock there lying and sustained permanent injuries in this, that the internal malleolus bone was broken in his right leg or ankle, which never mended leaving the ankle in a permanently weakened condition so that it is liable to be thrown out of position when he attempts to use it, his ankle was then thrown out of position and the muscles of his ankle and foot were badly sprained, lacerated and torn and plaintiff has been entirely incapacitated from following his employment as a miner, at which he could earn two dollars a day, ever since said accident, and will be so incapacitated for months to come, as well as be permanently injured as already described; that on account of said injuries plaintiff has been put to an expense of ten dollars in buying medi-

cine for said foot and a doctor bill of ten dollars, and plaintiff on account of said injuries suffered great pain and mental anguish.

"That said injuries were the result of the negligent orders and assurances of defendant's foreman and were not the result of any negligence on the part of the plaintiff minor; that plaintiff has been damaged by such injuries so sustained by him in at least the sum of forty-five hundred dollars for which sum with his costs he asks judgment."

"H. H. BLOSS,
"Plaintiff's Attorney."

The words "negligently and carelessly" after the word "foreman," in said petition, were inserted by counsel, with the consent of the court, at the November term, 1902, of said court, over defendant's objections and exceptions.

Omitting caption, the answer is as follows:

"Defendant, for answer to the amended petition, denies each and every allegation in said answer contained.

"Further answering, defendant says that it is not true that plaintiff was injured by reason of defendant's negligence; but says that if the plaintiff was injured at all it was the result of his own negligence and that of his fellow-servants and coemployees; that the injury, if any, resulted from a risk incident to the plaintiff's employment; could not have been foreseen by the defendant, if not by the plaintiff, and was a risk assumed by the plaintiff by reason of his employment."

The new matter in the answer was put at issue by a reply.

Plaintiff's evidence tends to show that he was nineteen years old at the time he was injured. He had worked for five years in the mines and about one-third of that time had been doing the kind of work he was engaged in when hurt. He had been at work in defend-

ant's mine for about six weeks prior to his injury. The evidence shows that Robert Gilmore was the underground or mine boss who hired and discharged the men and gave directions as to where and how they should work. Plaintiff was a cutter, that is, he assisted in taking down the face of the drift in the mine. The mine was eighty or ninety feet deep and the drift had been driven fifty or sixty feet from the shaft. On the evening previous to the day plaintiff was injured he and the other employees in the mine, under the direction of Gilmore, the boss, erected a scaffold about thirty feet high for the men to work on in taking down the wall or face of the drift. Plaintiff and some of the other employees noticed a crack or crevice about one-half inch wide and from twenty-five to thirty feet long in what they called a "slab." This slab was over and near one edge or side of the scaffold. Plaintiff called Gilmore's attention to the crack and said to him it looked "kind of bad." Gilmore's reply was, "Hell, that won't fall." To another workman he said: "I don't think it will fall until we squib and there won't be any of us up here then," meaning that none of the men would be on the scaffold or under the slab. After the scaffold was completed nothing more was done until the next morning when to all appearances the slab and crevice were in the same condition as on the previous evening. On entering the mine the next morning Gilmore and five men, including plaintiff, got on the scaffold for the purpose of drilling to put in shots. Plaintiff and one other hand were directed by Gilmore to drill a hole a few inches above the crack in the slab. Gilmore and the others on the scaffold proceeded to drill holes at other points. After the drilling had been going on for a few minutes the slab, which was twenty-five or thirty feet square and six or seven feet thick, fell striking the scaffold and throwing part of it down, including the part where plaintiff was at work. Plaintiff, Gilmore and several others went down with the scaffold and were all more

or less hurt. Plaintiff lit on his right foot on a loose rock and received an injury to his right ankle. Some of the tendons or bones were broken or some of the ligaments were torn loose, resulting in an enlargement and stiffening of the ankle, greatly impairing its use.

Defendant took plaintiff's deposition before the trial which he read in evidence. In this deposition, in answer to the following question, "Describe how you came to get hurt?" Plaintiff said: "The morning of this accident there was a slab hanging in front of the scaffold and we went up on it to go to work. Myself and Gilmore and his brother and Pat Loller and Bert Sorenson and Ollie Jenkins had built the scaffold the day before to work on, to drill. Before we went to work after we were on the scaffold, one of the boys asked the foreman, Bob Gilmore, if he thought the slab would fall. He said that it wouldn't unless it was when we squibbed the shot and then no one would be on the scaffold. And then he came over to where me and Ollie Jenkins were and told us where to go to work. We went to work and the slab fell. I don't know what made it fall, but it fell and that made the scaffold fall."

Plaintiff testified that the probability of the slab falling was discussed among the men the evening before it fell. Some of them thought it might fall but Gilmore expressed the opinion that it would stay until after they squibbed. Plaintiff asked Gilmore if he thought it was dangerous and Gilmore replied that he thought it would stand. Plaintiff said he thought it looked like it might fall, "but the boss had had more experience than I had and I supposed he knew." Plaintiff also testified that it was customary in mines when there was a crack overhead to pry down whatever had the appearance of falling. Defendant's evidence shows that rock and dirt frequently fall from the roof of a mine and that it could not be told when they would fall, sometimes there would be a crack and nothing would fall

and at other times things would fall when there was not much of a crack to indicate that "anything might fall." Defendant's evidence shows that C. F. Johnson was the general superintendent of defendant's mine; that he was mostly above ground, but occasionally went below into the mine; that Robert Gilmore was the mine boss, had charge of the men working in the mine and directed them when and how to work and worked with them and was authorized to employ and discharge men.

At the close of all the evidence defendant asked the court to instruct the jury to find the issues for the defendant. The court refused to give this instruction and gave the following for plaintiff:

"1. The court instructs you that if you believe from the evidence, that at the time plaintiff was injured, he was in the employ of the defendant as a laborer in the ground of defendant's mine, and that he was in charge of, and under the direction and control of one Robert Gilmore, as ground foreman in said mine, and that said Gilmore was employed by the defendant to act as such foreman; and if you further believe from the evidence that as such foreman, said Gilmore had authority, and that it was his duty to have charge of and direct the work and the manner in which plaintiff was engaged at the time he was injured; and that it was the duty of the plaintiff to obey the orders and directions of said ground foreman as to the place and manner of doing the work in said mine at the time that plaintiff was injured; that while so engaged and in obedience to the command and direction of said foreman, negligently directed plaintiff to take his position on the top of a scaffold in defendant's mine, and was while on said scaffold and prior to said injuries, assured by the defendant's foreman, when inquired of whether it was safe to work on said scaffold, on account of the overhanging slab noticeable there, that it was safe and that the plaintiff in obedience to said order and relying thereon continued to remain and work on said scaffold,

and while in obedience to said order he was in the discharge of the duty and work assigned him, the said slab fell, causing the said scaffold to fall which resulted in plaintiff's injuries, then the plaintiff is entitled to recover in this action, unless precluded for some other reason assigned in the further instructions given you.

"2. The court instructs you that notwithstanding you may believe from the evidence that the plaintiff knew, or by the exercise of ordinary care, could have known, that the position he was working in at the time he was injured, being under the slab in question, was not a safe one, yet, this does not and should not defeat his recovery in the case; if you further find and believe from the evidence that he was negligently ordered into this position by the defendant's foreman, Robert-Gilmore, and that the danger from the overhanging slab was not of such glaring and dangerous nature as to threaten immediate injury in case he obeyed said order.

"3. The court instructs you that if the defendant's foreman, Robert Gilmore, knew and was advised of the fact that the slab in evidence in this case, was working loose, and with such knowledge on his part ordered the plaintiff to work immediately under said slab and assured him that it was safe, then such order was negligently made and assurance negligently given within the meaning of these instructions, unless the danger was of such glaring nature that no prudent person, under the circumstances, would have obeyed the order.

"4. If the jury find the issues for the plaintiff, in determining the measure of damages, they may take into consideration the mental and physical pain and suffering endured by plaintiff since said injury, in consequence thereof; the character and extent of said injury and its continuance, if permanent, together with his loss of time and service, and his inability, if any, resulting from said injury to earn a livelihood for himself and his necessary expense for medicine and medical attention, and you may find for him in such sum,

as in the judgment of the jury, under the evidence, will be a round compensation for the injury, not to exceed the sum of $4,500, the amount claimed in the petition."

Counter instructions were given for the defendant and a number asked by defendant were refused. Verdict and judgment for plaintiff for $550. Motions for new trial and in arrest proving of no avail, defendant appealed.

BLAND, P. J. (after stating the facts).—1. If it should be conceded that the petition failed to state a complete cause of action the amendment was permissible under section 657, Revised Statutes 1899; but even if the allowance of the amendment was erroneous the error was waived by the filing of an answer to the petition as amended. Liese v. Meyer, 143 Mo. 547; Bernard v. Mott, 89 Mo. App. 403.

2. The evidence for both parties shows that Gilmore hired and discharged men; that he superintended the underground work in the mine and directed the men where and how to work, therefore he was a vice-principal, notwithstanding the fact that he worked with the men and performed the same character and grade of labor they performed, and it was not error under all the evidence for the court to assume in the instructions that Gilmore was a vice-principal. Gormly v. Iron Works, 61 Mo. 492; Miller v. Railway, 109 Mo. 350; Dayharsh v. Railway, 103 Mo. 570; Russ v. Railway, 112 Mo. 45; Keown v. Railroad, 141 Mo. 86; Donahoe v. Kansas City, 136 Mo. l. c. 670; Steube v. Iron & Foundry Co., 85 Mo. App. 640; Haworth v. Railway, 94 Mo. App. 215. As vice-principal it was Gilmore's duty to provide the men with as reasonably safe places to work as the nature of the employment would admit. Dayharsh v. Railway, supra.

3. Though the plaintiff was but nineteen years of age yet was an experienced miner and assumed such risks as were usually incident to his employment and

such other risks, if any, as were glaringly presented to one of his experience as a miner. The evidence shows that plaintiff in common with the other employees, observed the crevice the evening before the boulder fell and the probability of its falling was discussed among the employees and Gilmore; that Gilmore expressed the opinion that it would not fall. On the return to the mine the next morning no change was perceptible in the crevice, and Gilmore was then asked by plaintiff what he thought of it and he again expressed the opinion that it would not fall until it was squibbed and told plaintiff where to work and what to do. Plaintiff testified that he relied upon the superior judgment of Gilmore and went to work as ordered. It may be conceded from this evidence that plaintiff was apprehensive that the boulder would fall, and the very fact that he called Gilmore's attention to the crevice shows he had some apprehension of danger, but the foreman was of the opinion it would not fall and expressed that opinion in very forcible language. In these circumstances, notwithstanding plaintiff apprehended danger, he had a right to rely on the superior judgment of the foreman and obey his orders and because he did so he is not to be convicted, as a matter of law, of assuming the risk of the danger he apprehended. Stephens v. Railway, 96 Mo. 207; Monahan v. Coal Co., 58 Mo. App. 68; Larson v. Mining Co., 71 Mo. App. 512. The boulder had remained in place over night without any perceptible change in the crevice. It can not be said, therefore, as a matter of law that the danger was so manifest as to threaten immediate injury and whether or not plaintiff was guilty of contributory negligence or of assuming the risk threatened by the crevice in the boulder, was a question of fact for the jury. Hamilton v. Mining Co., 108 Mo. 364; Lucey v. Oil Co., 129 Mo. 32; Minnier v. Railway, 167 Mo. 99.

In the case of Aldridge's Admr. v. Furnace Co., 78 Mo. 559, relied on by defendant, there was no assur-

ance to the plaintiff by the mine boss that the mine was safe, and the evidence tended to show that the danger was patent to any ordinarily observant man. The facts in the case at bar are essentially different from the facts in the Aldridge case. The danger was not a patent one but was merely an apprehended one and there was assurance of safety given by the foreman. The case of Watson v. Coal Co., 52 Mo. App. 366, is, in its facts, like the Aldridge case. So also are the numerous other cases cited by the defendant from other states. They announce the general doctrine that an employee assumes the ordinary risk incident to his employment and such extraordinary risk as is patent to an ordinarily observant man or patent to one having experience in the business in which he is engaged. Whether or not the servant assumed the risk in this character of cases is most generally a question of fact for the jury. To authorize a court to say as a matter of law the danger assumed was so glaring that the servant can not recover, the evidence must be all one way and to one effect, that is, the danger must be so open and glaring that it could not have escaped the observation of an ordinarily prudent man or the notice of one with plaintiff's experience. The evidence in this case does not show that the danger was a glaring one, and the case was therefore properly submitted to the jury. The instructions given are in harmony with the views herein expressed and we think correctly presented the law of the case to the jury. The defendant's refused instructions were not supported by the evidence and did not correctly state the law. We think the case was fairly tried, that no prejudicial error intervened and that the judgment is for the right party and should be affirmed.

Judgment affirmed. *Reyburn* and *Goode, JJ.*, concur.