WILLIAM STROBEL, Respondent, v. GERST BROTHERS MANUFACTURING COMPANY, Appellant.

St. Louis Court of Appeals. Argued and Submitted March 9, 1910. Opinion Filed April 5, 1910.

1. **MASTER AND SERVANT: Injuries to Servant: Sufficiency of Evidence.** In an action by an employee for injuries sustained by falling over iron in leaving his place of work, evidence *held* to warrant a finding for plaintiff.

2. ———: ———: **Instruction.** In an action against the master by a servant for injuries received in falling over obstructions in the passageway leading from his place of work, an instruction that if the jury believed that on the day mentioned plaintiff was in the employ of the defendant company; that it was necessary for him, at the close of his day's labor, in order to leave the building, to pass through the finish room; that in passing through that room he used the only mode of egress provided by the defendant company for leaving the premises and that he was at the time exercising ordinary care for his own protection; that he slipped upon scraps of iron which were lying upon the floor of the room and thereby broke his knee; and that the presence of the scraps of iron upon the floor was caused by the failure on the part of defendant to exercise ordinary care in order to provide a reasonably safe place whereby the plaintiff could depart from said building, the verdict should be for the plaintiff, did not misdirect the jury and is *held* to be founded on the testimony.

3. ———: ———: **Master's Duty: Ways.** A master is liable for injuries to a servant because of incumbered ways; his duty to furnish a safe exit from the place of work being akin to his duty to furnish a reasonable safe place to work.

Appeal from City of St. Louis Circuit Court.—*Hon. Matt. G. Reynolds,* Judge.

AFFIRMED.

*Watts, Williams & Dines* and *Wm. R. Gentry* for appellant.

(1)   Where the defect complained of is not only "as obvious and open to the employee as to the employer," but, so far as it exists at all, such existence is glaring and palpable, recovery is never permitted.   Under such circumstances the employee assumes the risk.   Bennett v. Lumber Co., 116 Mo. App. 699; Berning v. Medart, 56 Mo. App. 443; Marshall v. Hay Press Co., 69 Mo. App. 256; Kleine v. Shoe & Clothing Co., 91 Mo. App. 102; Porter v. Railroad, 71 Mo. l. c. 77; Railroad v. Everett, 152 U. S. 107; Wendall v. Railroad, 100 Mo. App. 556; Fugler v. Bothe, 117 Mo. 475; Montgomery v. Railroad, 109 Mo. App. 88; Glasscock v. Dry Goods Co., 106 Mo. App. 657; Pohlmann v. A. C. & F. Co., 123 Mo. App. 219. The foregoing decisions were rendered in cases where the master had furnished the appliances or places to work for the very purpose for which they were being used at the time of injury; the principles announced, by these decisions, therefore should be more strictly applied in the case at bar, where no claim is made that the master provided and piled up the scrap iron to walk over or furnished it for any particular use.   (2)   Where the servant has the choice of two ways of performing labor, one of which is comparatively safe and the other dangerous and himself selects the latter, he cannot recover for injuries received.   Moore v. Railroad, 146 Mo. 572; Montgomery v. Railroad, 109 Mo. App. 88; 1 Bailey on Master and Servant, sec. 1121; Pohlmann v. Car & Foundry Co., 123 Mo. App. 228. The uncontradicted evidence shows that respondent could have gone to the point of his destination without climbing over the scrap iron.   He chose the latter course and in-

juries received by him were not caused by any neglect of duty of the master but were purely accidental. (3) Even in cases involving injuries suffered by the servant in the use of appliances furnished by the master for the very purpose for which they were being used, the employer is not an insurer of the sufficiency, nor of the absolute safety of such appliances. Krampe v. Brewing Assn., 59 Mo. App. 277; Brown v. L. & L. Co., 65 Mo. App. 162; Kelly v. Stewart, 93 Mo. App. 47; Breen v. Cooperage Co., 50 Mo. App. 202; Bennett v. Lumber Co., 116 Mo. App. 699; Glasscock v. Dry Goods Co., 106 Mo. App. 657; Browning v. Railroad, 118 Mo. App. 449. (4) The demurrer to the evidence should have been sustained. Beebe v. Transit Co., 206 Mo. 419. Negligence in this case is not to be inferred from the mere happening of the accident. Murphy v. Railroad, 115 Mo. 111; Harper v. Standard Oil Co., 78 Mo. App. 338. (5) Instruction No. 1 should not have been given. (a) There was no evidence that it was necessary for respondent to go through the finishing room. (b) There was no evidence that this was the only mode of egress. (c) There was no evidence that the mere presence of the scraps of iron on the floor of the finishing room at the close of the day's work in any way tended to prove failure of duty on the master's part; in cutting the manufactured product to its final length, size and shape there would necessarily be some such accumulation. (6) There was no evidence that the place in question was unsafe except the mere fact that plaintiff slipped and fell. Such evidence is not sufficient to go to the jury. "*Res ipsa loquitur*" does not apply. Glasscock v. D. G. Co., 106 Mo. App. 664; Wojtylak v. Coal Co., 188 Mo. 260; Fuch v. St. Louis, 167 Mo. 620; Hough v. Austin, 46 Ohio St. 386; Cosulich v. Standard Oil Co., 122 N. Y. 123; McGrath v. Railroad, 197 Mo. 104; Cothron v. Packing Co., 98 Mo. App. 343.

*Adolph R. Grund* and *Charles P. Williams* for respondent.

(1)   No assumption of risk arising from master's negligence.   Obermeyer v. Chair Co., 120 Mo. App. 73; Mack v. Railroad, 123 Mo. App. 537; Koerner v. St. Louis Car Co., 209 Mo. 157; Charlton v. Railroad, 200 Mo. 433; Kennedy v. K. C. Railroad, 190 Mo. 424; Longree v. Jackes-Evans, 120 Mo. App. 478; Shore v. Bridge Co., 111 Mo. App. 278; George v. Railroad, 125 S. W. 209.   (2)   The duty of the master to furnish a safe place to work includes a safe way of egress and ingress. Bridge Co. v. Jordan, 143 Ala. 603; Syrup Co. v. Carlson, 47 Ill. App. 178; Buzzell v. Lacoma Mfg. Co., 48 Me. 113, 117; Hobart v. Iron Co., 94 Minn. 257; Powder Co. v. Earlandson, 33 Ind. App. 251; Fitzgerald v. Paper Co., 155 Mass. 155; Ewald v. Railroad, 70 Wis. 420.   (3) Contributory negligence is matter for jury.   Allen v. Transit Co., 183 Mo. 411; Ashby v. Gravel Road Co., 99 Mo. App. 186.


REYNOLDS, P. J.—Action by plaintiff to recover damages for personal injuries sustained while in the employ of the defendant, the latter being engaged in the manufacture of architectural iron, carrying on that business in the city of St. Louis, plaintiff at the time of the accident being engaged as a moulder in the establishment. He was at work on the 15th of August, 1907, until about 5 o'clock in the afternoon of that day and in passing from the room in which he was at work, slipped upon some scrap iron lying on the floor of the room through which he was passing and fell, breaking his knee. The petition contains the usual averments of the incorporation of the defendant, the employment of the plaintiff, the duty of the employer to provide a reasonably safe place wherein the employees were required to work and to provide a reasonably safe access to and egress from the place at which they were required to

work and that on account of the failure of the defendant company to furnish plaintiff a reasonably safe passageway or egress from the premises, plaintiff, while leaving the premises of the defendant, sustained the injuries of which he complains. Setting out his expense incurred and suffering sustained, he claims $20,000 damages.

The answer was a general denial and a plea of contributory negligence. The reply was a general denial.

As the defendant, at the close of plaintiff's testimony and at the close of the testimony in the case, interposed demurrers challenging the presence of any testimony entitling plaintiff to recover, we have examined into it as far as necessary to determine this. As the statement of the respondent is rather more condensed than that of appellant, we follow it substantially in our statement of the facts. Defendant was conducting an iron foundry, engaged principally in manufacturing what is known as architectural iron. The premises consisted of a large building, somewhat longer from east to west than across the north and south. A long partition pierced with two openings run east and west the entire length of the building, the partitioning of the building so arranged as to form a long room on the south side. The eastern end of this room was known as the molding shop and there plaintiff worked. Along the floor of the molding shop were various piles of sand, separated by passageways to allow the molders to move from one point to another. These piles of sand were used in molding the iron, and each pile was technically known as a "floor.'" At the western end of the molding shop was what is known as the "beam shop" or "structural shop," but it was part of the large molding room proper. Immediately north of this beam shop was a large room known as the "dog house." East of this and occupying the whole northeast corner of the building was a room used partly as a blacksmith shop and partly as a "finish shop." No partition separated these two

divisions. An opening about fifteen or twenty feet wide led from the western part of the molding room north into the "dog house," and another opening of about the same width led from the eastern portion of the molding shop north from the blacksmith and finish shop and an opening led east from the "dog house" from the blacksmith and finish shop. There were two doors in the premises opening out upon the street, both were in the blacksmith and finish shop. One of them was on the north side near the middle of the room and opened out on Cass avenue, the other was on the east side and opened out upon Eighth street. There was another door at the east end of the molding room opening into Eighth street but it is not in evidence that this door was ever opened or used by the employees. The testimony on the part of plaintiff is that it was closed and not used by the employees. When the time came for a workman in the molding room to quit his work, he necessarily went into the room known as the blacksmith and finish room in order to leave the premises. Another reason for this was that the time clock was located in this finish room upon which all employees were required, under penalty of a fine for failure to do so, to register their hour of leaving. In the blacksmith or finish shop there was a forge, a drill press, an anvil and various work tables and benches scattered around. Plaintiff was working here and at 5 o'clock on the 19th of August, 1907, quitting his labor, walked from the molding room north, through the opening leading from the molding room directly into the blacksmith and finish shop. Going to the time clock he walked through a passageway running north and south between some trestles for supporting heavy work and a workbench. It was in this passageway, and while going through it, that he fell, fracturing the femur bone just above or in the right knee joint. When plaintiff started out and got into the blacksmith or finish shop, the passageway on the east side of the room was blocked so that there was no passage

that way. It had always been impossible to go through this eastern passageway. He did not go around through the "dog house" and enter the blacksmith and finish shop that way as there had been "a heat" that day and the passageway through the "dog house" was obstructed with caldrons for melting metal, ladles, flasks, snap boxes, sand piles and crane, and in going out that way there were obstructions of all kinds, such as of cornice iron, nor was it possible to get to the time clock by going that way, as it was blocked off with freshly painted cornices. The evidence, therefore, tended to show that the way that the plaintiff took was practically the only way to get out; he possibly had to do that to register on the clock. The other workmen passed through the same way and the rule and custom was to go straight through the shop. The passageway that the plaintiff used on this occasion was the regular passway used by all the employees; it was two or three feet wide, was piled up with iron, the piles being 8 or 10 inches high and several feet long and extended under the trestles of the table. At the time he fell this stuff was lying there as it had always done; it was piled up in this way with scrap iron and rubbish. The witnesses did not remember that the room used as an exit had ever been cleaned, but the workmen walked over it every night. Some round and flat iron had been received the morning of the accident from the iron store and had been thrown down between the trestles and the work table and this was directly in the passageway that plaintiff took and was somewhere about the point where he fell. The secretary and general manager of the defendant was in the same room when plaintiff fell and had been around the shop that day. Upon seeing that the other ways were blocked, plaintiff thought that it was safe to attempt the regular passageway. He saw the pile of iron and while walking carefully over it both his feet slipped out from under him and his knee struck against some iron. This is practically the evidence on the part of plaintiff, or to

put it more favorably to defendant, there is evidence in the case tending to show the above facts.

On the part of defendant there was evidence tending to contradict the greater part of this, in that it tended to show that plaintiff could have gone out safely by using another exit, that he knew the condition of the premises and hence had assumed the risk attendant upon going through a passageway that he knew was obstructed.

At the instance of plaintiff the court gave an instruction, somewhat modified in form than as requested by plaintiff, to the effect "that if the jury believed that on the day mentioned plaintiff was in the employ of the defendant company and that it was necessary for him, at the close of his day's labor, in order to leave the building, to pass through the finish room; that in passing through that room he used the only mode of egress provided by the defendant company for leaving the premises and that he was at the time exercising ordinary care for his own protection, and that he slipped upon scraps of iron which were lying upon the floor of the room and thereby broke his knee, and that the presence of the scraps of iron upon the floor was caused by the failure on the part of defendant to exercise ordinary care in order to provide a reasonably safe place whereby the plaintiff could depart from said building, the verdict should be for the plaintiff." This was excepted to by defendant. The court refused a request for an instruction in favor of defendant on all the evidence, to which refusal defendant duly saved exception, and of its own motion the court instructed the jury as to the measure of damages, that if they found for plaintiff they would assess his damages at such sum as the jury might believe from the evidence would compensate plaintiff for such expense as he might have incurred for medicines, physicians and nurses and which were made necessary by the injury sued for, and in addition, such sum as the jury might find and believe from the evidence

would fairly compensate him for any permanent incapacity from following his usual occupation as a molder that has been caused directly and proximately by the injury complained of. This, as well as the instruction given as to the number of jurors necessary to find a verdict, was also excepted to by defendant. At the instance of the defendant the court gave six instructions, the first (No. 2) defining ordinary care, the second (No. 3) told the jury that the plaintiff, by entering and continuing in the employ of the defendant, assumed the risk of any injury that might result from the employment on account of any dangers arising from the conduct of the business and the condition of the premises, as such business would be conducted and such premises maintained in the ordinary and usual way by reasonably prudent men engaged in like business, and if the jury find that the condition of the premises was such as usually and customarily exist in similar places as conducted by reasonably prudent men engaged in such business, defendant is not liable. Instruction number 4 told the jury that if they believed that there was any passageway in the defendant's shop on the occasion in question through which plaintiff could have passed to the point at which he attempted to go by the exercise of ordinary care with reasonable safety to himself, plaintiff is not entitled to recover. Instruction number 5 told the jury that the defendant was not obliged to do more than exercise ordinary care to keep its premises in reasonably safe condition for the use of its employees while at work and while passing to and from their work, nor was the defendant required by the law to keep or maintain any particular kind of passageway through its shop for the use of its employees, and if the jury believed and found from the evidence that defendant was exercising ordinary care to keep its shop in reasonably safe condition for the use of its employees while at work and while passing to and from their work, and that the condition of the shop was such that if plaintiff had exercised or-

dinary care for his own safety he could have passed safely from his place of work to the time clock to which he was attempting to go, then plaintiff is not entitled to recover, even though the jury further find from the evidence that there were obstructions in the particular passageway through which he attempted to pass. Instructions numbers 6 and 7 were as to the credibility of witnesses and the weight to be given to them in determining their credibility. Instruction number 7, after calling attention to the fact that in determining the credibility of the witnesses the jurors should look to and consider the manner and demeanor of the witnesses and their probable interest or bias, concludes thus: "And having thus carefully considered all these matters, the jurors must fix the weight and value of the testimony of each and every witness, and the evidence as a whole, and you are not compelled to accept as true any statement made by any witness unless the jurors find such statement to be true after considering the same in connection with all the facts and circumstances before them."

The jurors, nine of them concurring, returned a verdict in favor of the plaintiff in the sum of two thousand dollars. Afterwards, in due time, defendant filed its motion for new trial which was overruled, exceptions saved and appeal duly perfected to this court by the defendant.

The assignments of error in this court are to the refusal of the instruction in the nature of a demurrer to the evidence at the close of plaintiff's evidence and a like refusal at the close of all the evidence. Error is also assigned on the instruction given as modified by the court at the request of plaintiff, the error assigned on this instruction being that it submitted to the jury the question as to whether or not it was necessary for plaintiff to go through the finish room, when plaintiff's own evidence established the fact that he could have gone out in at least two other ways, and fur-

ther that it assumed that "over the alleged scrap pile" was a mode of egress furnished by defendant, contrary to the plaintiff's own evidence; it submitted the issue whether or not the route taken by plaintiff was or was not the only one provided by defendant, contrary to plaintiff's own admissions. The fourth and fifth errors are to the overruling of the motion for new trial and that on the record the judgment was for the wrong party.

We have set out what we consider a fair synopsis of the evidence in the case. We have set out the instructions given at the instance of plaintiff and at the instance of the defendant. It is useless to contend that the demurrers to the evidence should have been sustained. There was evidence to warrant the jury in finding for the plaintiff. Nor are the errors assigned to the instruction given at the instance of plaintiff as modified by the court tenable. The objections are founded on a rather one-sided view of plaintiff's testimony and lose sight of his testimony as a whole. We do not think the instruction tended to misdirection of the jury, nor do we think that it is subject to the criticism leveled against it by the learned counsel for defendant. The defendant surely has no cause to complain in this case of the manner in which the jury was instructed in those given at its request. If we were going into an examination of instructions on appeal of the defendant, we should be inclined to hold that they were rather too favorable and presented the defendant's case rather too strongly to the jury. But they are not before us as the plaintiff is not complaining, and we are not remanding the case.

"An employer is liable if the ways used by his servant, either in driving or walking, are encumbered." [1 Labatt, Master & Servant, p. 235, sec. 100a.] The employer's duty to his employee to furnish a safe exit and ingress to his place of work is akin to his duty to furnish a reasonably safe place to work. See Lore

v. American Mfg. Co., 160 Mo. 608, 61 S. W. 678; Irmer v. Brewing Co., 69 Mo. App. 17. See also Fitzgerald v. Conn. River Paper Co., 155 Mass. 155; McGovern v. Central Vt. R. R. Co., 123 N. Y. 280; Dorney v. O'Neill, 49 App. Div. (N. Y.) 8, s. c. 60 App. Div. 19, l. c. 21. The trial was without error to the prejudice of the defendant, the judgment is manifestly for the right party, and assuming that the extent of the injury is as testified to, the verdict is moderate in amount, so that we see no ground whatever for complaint on the part of the defendant. The judgment of the circuit court is affirmed. All concur.