ELIJA RYON, RESPONDENT, v. AMERICAN CAR & FOUNDRY COMPANY, A CORPORATION, APPELLANT.*

St. Louis Court of Appeals.   Opinion filed July 5, 1927.

**1.—Master and Servant—Safe Place to Work—Duty of Master—Exits.**  The duty on the part of the master to exercise ordinary care to furnish the employees reasonably safe instrumentalities and place to work extends equally to the ways and means of exit from that place of work.

**2.—Appellate Practice—Demurrer to Evidence—Plaintiff's Evidence Taken as True.**  In an action for damages resulting from injuries alleged to have been sustained by plaintiff whilst making his exit at quitting time through a darkened factory where he was employed, in considering defendant's demurrer offered at the close of the case, the appellate court must take as true the testimony of plaintiff to the effect that plaintiff's straw boss and the defendant's **alter ego**, representing the defendant in respect to *its* duty to exercise ordinary care to furnish a safe place, was present at the quitting time when the lights went out, before plaintiff and the men who worked with him had been afforded a reasonable time in which to leave the building.

**3.—Master and Servant—Servant Injured—Negligence—Vice Principal—Straw Boss Directing Employees to Make Way Through Darkened Factory—Evidence—Jury Case.**  In an action for damages resulting from injuries alleged to have been sustained by plaintiff whilst making his exit at quitting time, through a darkened factory where he was employed, held that the act of plaintiff's straw-boss, and the defendant's **alter ego**, in directing plaintiff and his co-laborers to make their way through the darkened factory, under all of the facts and circumstances in the case with respect to its care and negligence, was a proper question for the jury, hence the overruling of defendant's demurrer to the evidence offered at the close of the case was well ruled.

**4.—Instructions—Burden of Proof—Number of Witnesses—Reversals.**  An instruction that by the terms "burden of proof" and "preponderance of the

evidence" the court intended no reference to the number of witnesses testifying concerning any fact, or upon any issue in the case, in view of the fact that no issue presented itself wherein there was a numerical superiority of the witnesses testifying on behalf of the defendant as against those on behalf of plaintiff, and though the instruction be technically erroneous, the jury could not have been misled in their determination of the preponderance of the evidence, and, **held** that the error in said instruction, under all the facts in the instant case, in the light of section 1513, Revised Statutes 1919, was not error prejudicial to any right of defendant requiring a reversal.

*Corpus Juris-Cyc. References: Appeal and Error, 4CJ, p. 764, n. 76; p. 1029, n. 30; p. 1173, n. 70, 72; Master and Servant, 39CJ, p. 349, n. 48; p. 1167, n. 71, 72; p. 1168, n. 74.

Appeal from the Circuit Court of the City of St. Louis.—Hon. Franklin Miller, Judge.

Affirmed.

*Watts & Gentry* for appellant.

*G. A. Orth,* of counsel.

(1) The court erred in overruling the demurrer to the evidence at the close of the plaintiff's case, and again at the close of all the evidence in the case. (a) The sudden extinguishing of the lights, without proof as to the cause thereof and without proof of any notice to the master in time to correct the condition before plaintiff was injured, did not tend to prove negligence on the part of the master. Bailey v. Dry Goods Co., 149 Mo. App. 656; Dorney v. O'Neill, 34 N. Y. App. Div. 497. (b) The presence of various trucks, piles of lumber, machines and other objects in various places in the wood shop did not tend to show negligence on the defendant's part, for those objects were there in the regular course of business and constituted no source of danger whatever so long as the adequate lighting system customarily used was in use. (c) The alleged exclamation by the straw boss, "Hell men, let's get out; we can't tell how long we'll be here," did not constitute a negligent order on defendant's part affording right of recovery, for two reasons: First, it was uttered at a time when the straw boss had no control over plaintiff, the relation between him and plaintiff being severed by the completion of the day's work; and, second, it was not an order of direction or requirement, but was a mere suggestion from one man to others, which they were at liberty to adopt or reject. (2) The court erred in giving of its own motion instruction No. 9, on the burden of proof. This instruction has been condemned twice by our Supreme Court. Hite v. Ry. Co., 255 S. W. 916; In re Trautman's Estate, 254 S. W. 286.

*Foristel, Mudd, Hezel & Habenicht* for respondent.

(1)   There are two distinct and essentially different charges of negligence in the petition, (1) failure to exercise ordinary care to furnish a safe place, and (2) negligent order and direction to use the darkened factory as means of egress. The demurrer was general, and it was for that reason proper for the court to overrule it, if there was evidence tending to support the verdict on either of those charges. The demurrer should be ruled on the pleadings and the evidence without regard to the election by plaintiff of the issues upon which he will submit his case to the jury.   Kenefick v. Insurance Society, 205 Mo. 294; Torrence v. Pryor, 210 S. W. 430; Sbiglio v. Lead Co., 243 S. W. 204; Schroeder v. Wells, 276 S. W. (Mo.) 60.   (2)   The duty of care on the part of the defendant to furnish plaintiff reasonably safe instrumentalities and place of work, extend equally to the way and means of exit from that place of work.   1 Labatt, Master & Servant, 235, sec. 100a; Jackson v. Butler, 249 Mo. 342; Hake v. Stove & Range Co., 234 S. W. 1061; Strobel v. Gerst Bros. Mfg. Co., 148 Mo. App. 22; Bailey v. Dry Goods Co., 149 Mo. App. 656. (3)   ''Charlie,'' the straw boss, on plaintiff's evidence (and so far as concerns the demurrer that evidence is conclusive), was the defendant's *alter ego* and represented the defendant in respect to its duty to furnish a safe place.   4 Labatt, page 4304, footnote 2; Schmeiser v. Furniture Co., 134 Mo. App. 493; Daharsh v. Railroad, 103 Mo. 570; Hagan v. Mining Co., 131 Mo. App. 386; Carter v. Baldwin, 107 Mo. App. 217; Hollweg v. Telephone Co., 195 Mo. 149; Burkhard v. Rope Co., 217 Mo. 466.   (4)   The act of ''Charlie,'' the straw boss, in directing the plaintiff to grope his way through the darkened factory, instead of providing a light, was, with respect to its care or negligence, a proper question for the jury.   Stubbs v. Am. Press, 254 S. W. 105; Wright v. Iron & Steel Co., 250 S. W. 942; Cox v. Granite Co., 39 Mo. App. 424; McCarver v. Lead Co., 268 S. W. 687; Plummer v. Ford, 208 S. W. 489; Stuart v. Standard Oil Co., 211 Mo. App. 345.   (5)   The knowledge of the straw boss. ''Charlie,'' that the lights were out and of the consequent exposure of plaintiff to the danger of trying to grope his way out of the dark factory was knowledge of the master.   Stubbs v. American Press, 254 S. W. 105; Boddenmueller v. Box Co., 237 S. W. 879; Banks v. Ry. Co., 40 Mo. App. 458; Morgan v. Zinc Co., 199 Mo. App. 26; Bailey v. Dry Goods Co., 149 Mo. App. 656.   (6)   The authority of the straw boss was incidental to and inherent in the plaintiff's relation to the defendant as employee and with that relation continued until plaintiff had had a reasonable opportunity to safely leave the place of work.   Cases cited under Point 2; 39 C. J., p. 275, sec. 399; Perkinson v. Riley, 50 Kan. 401; Hehnke v. Thilmony,

107 Wis. 216; Ewald v. Railroad Co., 70 Wis. 420; Marshall v. U. R. Co., 184 S. W. 159; Arnold v. Graham, 272 S. W. 90; Flanigan v. Railroad, 276 Mo. 656.

BECKER, J.—Plaintiff recovered judgment against the defendant in an action for damages resulting from injuries alleged to have been sustained whilst in the employ of the defendant. Defendant in due course brings this appeal.

Plaintiff's petition alleges that whilst in the employ of defendant, on the 8th day of December, 1924, at about five-thirty in the evening, which was the usual quitting time, the lights of the wood shop of the defendant company in which he was then at work, were extinguished, leaving the place in complete darkness; that the defendant's foreman in charge of its work and of the plaintiff, ordered, directed and required the plaintiff and other employees, during the time of said complete darkness in the factory, to walk out of the said factory and away from the said place of employment and to pass along and through said factory; that plaintiff, in obedience to said order was in the act of walking away from said place of employment and out of said factory when plaintiff struck against and came in sudden and violent contact with some object or objects in the said dark and unlighted place in said factory, resulting in severe and permanent injuries, "all as a direct and proximate result of the negligence and carelessness of the defendant, in the following respects:

"1. That defendant negligently and carelessly failed to exercise ordinary care to furnish plaintiff with a reasonably safe place in which to work, in this, that said place in defendant's said factory where plaintiff was required to work, and where he was engaged and working, as aforesaid, contained, and had distributed about therein, a great number of solid objects, such as lumber piles, machinery, hand trucks and rubbish piles, and that after said lights there, as aforesaid, had been extinguished and 'gone out' as aforesaid, and when said place there in defendant's said factory was in complete darkness, defendant, by and through its said foreman, negligently ordered, directed, caused, suffered, permitted and required plaintiff to walk away from said place and out of said factory, during a time when said place in said factory was in complete darkness, and persons, particularly plaintiff, while so walking in, along and through said place in said factory, in going out of the same, was likely to strike against and come in sudden and violent contact with objects there in said dark and unlighted place in said factory, and injure him, all of which defendant knew, or by the exercise of ordinary care would have known.

"2. That defendant, acting by and through its said foreman, negligently and carelessly, ordered, directed, caused, suffered, permitted

and required plaintiff to walk away from said place in said factory
where he was engaged and working, as aforesaid, and to walk in,
along and through said factory at said place therein, as aforesaid,
during a time when said place in said factory was in complete dark-
ness, as aforesaid, and when there was in said place solid objects, as
aforesaid, placed and existing therein, as aforesaid, when defendant
knew, or by the exercise of ordinary care would have known, that
persons, particularly plaintiff, while so, as aforesaid, walking in,
along and through said dark and unlighted place in said factory, as
aforesaid, was likely to strike against and come in sudden and vio-
lent contact with said solid object or objects there in said factory, as
aforesaid, and injure him, while he was so walking in, along and
through said dark and unlighted place in said factory, as aforesaid,
and that said place was not reasonably safe and was dangerous."

The answer was a general denial.

Plaintiff himself testified to the effect that he had been working
about a month in the south end of the building known as the wood
mill, which was under the general charge and supervision of a general
foreman named Charles Siedler; that said Siedler took him to a man
who was known as "Charlie" whose surname plaintiff did not know,
and was told that he was to be his boss or foreman; that plaintiff
worked in a gang with some ten or twelve other men, working as off-
bearer around saws and planers under the straw boss "Charlie;"
that in the building in question the electric lights were kept burning
all through the day; that the usual quitting time was five-thirty in
the afternoon, which time was indicated by the blowing of a steam
whistle; that on the afternoon in question, when the whistle sounded
the close of the work, the electric lights were burning just as usual.
Plaintiff thereupon left the point at which he was working and went
to a place about twelve feet north where he picked up his coat and
was putting it on when the lights suddenly went out all over the
plant, leaving it in total darkness. It was also dark out of doors at
the time. Plaintiff and other workmen waited a few minutes and
then plaintiff heard the straw boss "Charlie" call out, "H—l, men,
let's get out; we can't tell how long we'll be here;" that thereupon
the men all started to find their way through the factory the best
they could. No flash-lights were used and it was against the orders
of the company to light any matches in that part of the factory be-
cause of the shavings around the planes and the sawdust from the
saws; that on the afternoon in question, according to the company's
usual custom, a great quantity of material had been brought in late
in the afternoon, so as to have material in readiness for beginning
work on the following morning; that there were many truck loads of
materials sitting around in the mill; that there were various pieces of
machinery, such as planers and saws on the floor, and that there

were no distinct aisles running through the shop; that whilst it was no difficult task to pass through the shop with lights on, yet with the place in total darkness, it was impossible to see any object on or about the floor of the building, and that as plaintiff groped his way through the darkness, walking at a regular gait, and making his way toward the north end of the plant, following after his straw boss and the other men of his gang, to the place where he had to procure a small metal disk bearing his special number and put it in the place required by the rules of the company at the close of each working day, he suddenly collided with some object, the nature of which he could not discover, and as he struck it violently he fell backwards landing on his left shoulder and his left hand, injuring himself; that he picked himself up as best he could, found his way out to the north end of the factory, the lights being out all of the time.

On the part of the defendant evidence was adduced tending to show that in that particular part of the factory where plaintiff worked, they had a foreman and four sub-foremen or straw bosses; that the four strawbosses were Charles Vogt, Louis Landhabe, John Mollich and Arthur Cochran.

Charles Vogt testified he was one of the straw bosses under Charles Siedler; that he did not know plaintiff, and that plaintiff had not worked under him, and that there was no other straw boss in the mill under Siedler by the name of Charlie. He testified that he remembered the lights going out suddenly on the evening in question just after quitting time; that the lights went out just as he was getting ready to go home. He said that he did not, nor did he hear any one else say to the gang of men, "let's get out of here. There is no telling how long these lights will be off."

The foreman, Siedler, testified that Vogt was the only other boss under him who had the given name of Charles, but on cross-examination he testified that it was possible that the men working under a straw boss for a long time might not know his name but might call him by a nickname; that he did not know who was straw boss over the gang that plaintiff worked under at the time he met with his injuries, nor did he know by what name the men knew him.

Defendant also adduced one William G. Friedlein who testified he was an employment man and safety inspector for the defendant at its wood car department and corroborated witnesses Siedler and Vogt as to there being four straw bosses under Siedler, and that but one of them had a given name of Charles. He did not know who was the boss over plaintiff at the time in question and stated that he could not find out by checking the record because a man may be placed "with this boss today and another boss tomorrow."

There was a verdict for plaintiff in the sum of $3000, the full amount sued for. On consideration of the motion for new trial, the

trial judge ordered a remittitur of $1000 as a condition to overruling the said motion. The remittitur was duly made and judgment entered for $2000.

Defendant here on appeal assigns as error the overruling of its demurrer offered at the close of the case, and in support of its contention argues that the sudden extinguishing of the light without proof as to the cause thereof, and without proof of any notice to the master in time to correct the condition before plaintiff was injured, did not tend to prove negligence on the part of the master; that the presence of various trucks, piles of lumber, machinery and other objects in various places in the wood shop did not tend to show negligence on the defendant's part, for these objects were there in the regular course of business and constituted no source of danger whatsoever so long as an adequate lighting system customarily in use was in use, and that the alleged exclamation by their boss, "H—l, men, let's get out; we can't tell how long we'll be here," did not constitute a negligent order on the defendant's part, affording right of recovery because it was uttered at a time when the straw boss had no control over plaintiff, the relation between him and plaintiff having been severed by the completion of the day's work, and because it was not an order of direction or requirement but was a mere suggestion from one man to others, which they were at liberty to adopt or reject.

We note that defendant's demurrer offered at the close of the case was general, though plaintiff's petition contained two distinct assignments of negligence therein, namely, first, a failure to exercise ordinary care to furnish a reasonably safe place in which to work; second, a negligent order and direction to use the darkened factory as means of egress. In this situation, if plaintiff adduced testimony tending to prove either of these assignments of negligence pleaded, defendant's demurrer was properly overruled.

The duty on the part of the master to exercise ordinary care to furnish the employees reasonably safe instrumentalities and place to work, extends equally to the ways and means of exit from that place of work. [Jackson v. Butler, 249 Mo. 342, 1. c. 264, 155 S. W. 1071; Hake v. Stove Co. (Mo. App.), 234 S. W. 1061; Strobel v. Mfg. Co., 148 Mo. App. 22, 127 S. W. 421; Bailey v. Dry Goods Co., 149 Mo. App. 656, 1. c. 661, 127 S. W. 421.] And upon the record, considering defendant's demurrer, we must take as true the testimony of plaintiff to the effect that "Charlie" plaintiff's straw boss and the defendant's *alter ego* representing the defendant in respect to its duty to exercise ordinary care to furnish a safe place, was present at the quitting time when the lights went out, before plaintiff and the men who worked with him, had been afforded a reasonable time in which to leave the building. [Burkard v. Rope Co., 217 Mo. 466, 117 S. W. 35; Hollweg v. Tel. Co., 195 Mo. 149, 93 S. W.

262; Carter v. Baldwin, 107 Mo. App. 217, 81 S. W. 204; Schmeizer v. Furn. Co., 134 Mo. App. 493, 114 S. W. 1043.] And, according to plaintiff, when the lights were extinguished, the factory was enveloped in complete darkness and there were no definite passageways left open or provided for the employees to make their exit from the building. The floor of the building in which plaintiff worked had machinery, trucks, piles of lumber and various obstructions upon it. All of the facts and the entire situation were definitely known to the defendant's straw boss in charge of the gang of men of whom plaintiff was one, for he was present in person. In this situation can it be ruled that the straw boss, the *alter ego* of the master, exercised ordinary care in directing the men, "H—l, men, let's get out; we can't tell how long we'll be here." We are rather inclined to the view and so hold that the act of "Charlie" the straw-boss in directing plaintiff and his co-laborers to make their way through the darkened factory, under all the facts and circumstances in the case with respect to its care and negligence, was a proper question for the jury, and that the defendant's demurrer was well ruled. [Stuart v. Oil Co., 211 Mo. App. 345, 244 S. W. 970; McCarver v. Lead Co. (Mo. App.), 268 S. W. 687, l. c. 689; Wright v. Iron & Steel Co. (Mo. App.), 250 S. W. 942; Stubbs v. Amer. Press Co. (Mo. App.), 254 S. W. 105, l. c. 109.]

What we have ruled above disposes of all but one additional assignment of error which is leveled at the giving of an instruction by the court on its own motion on the burden of proof. The instruction reads as follows:

"The court instructs the jury that the burden of proof is on the plaintiff to establish by the preponderance or greater weight of the evidence, the facts necessary to a verdict in his favor under these instructions.

"By the terms 'burden of proof' and 'preponderance of the evidence,' the court intends no reference to the number of witnesses testifying concerning any fact, or upon any issue in the case, but simply uses those terms by way of briefly expressing the rule of law, which, that unless the evidence (as to such issue) appears in your judgment to preponderate or outweigh in repect to its credibility, in favor of the party to this action on whom the burden of proof (as to such issue) rests, then you should find against such party on said issue."

It is urged that this instruction is clearly erroneous in that it tells the jury that the court intended no reference to the number of witnesses testifying to any fact or upon any issue in the case. In support of this contention we are cited Hite v. St. Joseph & G. I. R. Co. (Mo.), 225 S. W. 916, l. c. 921, and In re Trautmann's Estate (Mo.), 254 S. W. 286, l. c. 289.

In the latter case the court in the course of the opinion said: "The instruction defining the burden of proof and preponderance of the evidence, given at the instance of the plaintiff, was technically erroneous, in that it in effect told the jury that the number of witnesses testifying upon any given question was of no consequence and was not to be considered. [Hite v. St. Joe, etc., Co. (Mo.), 225 S. W. 916, 10 R. C. L. 1005.] Whether this error was of itself sufficiently prejudicial as to have required a reversal of the judgment, we need not determine as it can be avoided upon another trial."

And we quote the following from the Hite case, supra: "We agree with appellant's learned counsel that the number of witnesses testifying is an element ordinarily to be considered in determining the weight or preponderance of the evidence. If, in a given case, the witnesses were equally intelligent, equally truthful and free from bias, had equal opportunities for knowledge of the facts to which they testified, and were equally corroborated by the remaining evidence and common experience, the weight of the evidence would be determined solely by the number testifying for and against an alleged state of facts. It may be that there never was and never will be such a case. But to the extent that a case approximates the hypothetical case just mentioned, to that extent is the number of witnesses testifying determinative of the preponderance of the evidence. Had instruction number five been the only instruction given the jury in respect to weighing the evidence, appellant's objection would have been well taken. But the court gave in addition plaintiff's instruction number four above set out, and a similar one for defendant in which the jury were expressly told that they should give to the testimony of each and every witness such weight as it was fairly entitled to under all the facts and circumstances in evidence. Read in connection with these instructions, number five could not have been misleading. [Hulse v. Ry. Co. (Mo.), 214 S. W. 150, 155.]"

Analyzing the Hite and Trautmann's Estate cases, it is clear that an instruction of the type herein criticised must be viewed at least as technically erroneous. It will be noted, however, that the instruction in the Trautmann case, "in effect told the jury that the number of witnesses testifying upon any given question was of no consequence and was not to be considered," whereas the instruction in question in the instant case merely told the jury, "by the terms 'burden of proof' and 'preponderance of evidence' the court intends no reference to the number of witnesses testifying concerning any fact or upon any issue in the case," and then goes on and explains to the jury that those terms are used by way of "briefly expressing the rule of law that unless the evidence appears in your judgment to be preponderated or outweighed in respect to its credibility in favor of the party

to this action on whom the burden of proof rests, then you should find against such party on said issue.''

The Hite and Trautmann cases, as we read them, hold that the vice in an instruction of the kind here in question, attaches only to a situation where there is a numerical superiority of the witnesses testifying on one side of a material issue in the case. Examining the record before us we are clear in the view that no issue presented itself wherein there was a numerical superiority of the witnesses testifying on behalf of the defendant as against those on behalf of plaintiff, and therefore though the instruction be technically errone-ous, we are unable to rule that the jury could have been misled in their determination of the preponderance of the evidence. In other words, under the facts as they appear in the record before us, absent an issue in which more witnesses were adduced on behalf of the de-fendant than plaintiff, there was no room or opportunity for the jury to apply the criticised direction in said instruction. We have in mind that there was a conflict in the testimony as to whether or not a straw boss did in fact give the alleged direction to plaintiff and his co-laborers when the lights went out. That controversy, however, lay solely between the testimony of plaintiff who directly testified that his straw boss, whom he knew under the name of ''Charlie'' gave such direction, and Charles Vogt, a witness for the defendant who testified he was one of the four straw bosses in the employ of the defendant in the wood car shop, and that he was the only one who had the name of Charles, and that he gave no such direction and heard no one else give such direction. The fact that two other witnesses testified that there were four straw bosses, giving their names, and testified that Vogt was the only one whose given name of Charles, cannot in our view bring the facts of the case within a situation so as to invoke the benefit of the rule in the Hite and Trautmann's Estate cases. We are of the opinion and so hold, that the error in said instruction, under all of the facts in the case before us, was not error prejudicial to any right of the defendant, and in light of section 1513, Revised Statutes of Missouri, 1919, we rule this point adversely to defendant.

Our reading of the record satisfies us that the case was well tried and that the instructions given on behalf of the defendant were in fact more favorable to the defendant than it was entitled to. Judg-ment is for the right party and should be affirmed. It is so ordered. *Daues, P. J.*, and *Nipper, J.*, concur.