[No. 9081.  Department One.  December 12, 1910.]

HENRY ALLEN, *Respondent*, v. CHEHALIS LUMBER COMPANY, *Appellant*.[1]

MASTER AND SERVANT—NEGLIGENCE—APPROACH TO MILL.  A master is not liable to a planerman in a mill who, on invitation of a night watchman, left his working place to eat his lunch at a more suitable place, and upon returning over an unsafe approach to the mill, fell and was injured; although the master had not supplied him with any other suitable place to eat his lunch.

Appeal from a judgment of the superior court for Lewis county, Rice, J., entered February 14, 1910, upon the verdict of a jury rendered in favor of the plaintiff, in an action for personal injuries received by a planerman in a sawmill. Reversed.

*Dysart & Ellsbury, C. D. Cunningham*, and *W. W. Langhorne*, for appellant.

*Harmon & Hull*, for respondent.

FULLERTON, J.—The respondent recovered against the appellant for personal injuries, and this appeal was taken from the judgment entered in his favor.  The record discloses that the appellant owns and operates a sawmill, consisting of the mill proper in which the machinery for manufacturing lumber was contained, and of a dry kiln used for drying lumber after it had been cut into dimension stuff.  Both the mill and dry kiln were surrounded in part by lumber platforms built on the same level and on a level with the floor of the mill, but some eleven feet above the ground.  The platforms did not touch each other, the distance between them at the nearest point of approach being eighteen feet. Across this space two walks had been constructed.  The first was a walk some six feet in width constructed on a level with the tops of the platforms, and was used as a passageway

[1]Reported in 112 Pac. 338.

for footmen as well as for the purpose of trucking lumber
from one platform to the other. It was fastened at one end
by hinges to the platform on which it rested, and so arranged
as to be lifted up at the other end, the purpose of this being
to get it out of the way of cars which were sometimes run
along a track laid on the ground midway between the two
platforms. The second walk was a way for footmen only.
It was elevated sufficiently high to permit cars to pass under
it, with steps leading up to it, and was guarded by railings
sufficient to make it a safe passageway.

The respondent entered the employment of the appellant
on November 9, 1908. He was employed as a planerman,
his duty being to operate a planer which was located in the
mill proper. The mill was lighted by electricity generated
from a dynamo connected with the power that operated the
mill machinery, and in consequence, the lights went out when-
ever the machinery was shut down. At midnight it was cus-
tomary to shut down the mill for half an hour in order to
give the employees an opportunity to eat their meals. The
respondent, during the time of his employment, brought a
lunch with him and ate it by the light of a lantern. On the
night of the 17th of November, the mill stopped as usual,
and the respondent proceeded with his co-employees to eat
his lunch near the planer. At that moment the night watch-
man of the mill came along and told the men that a much more
comfortable place to eat their lunch was at the dry kiln, and
offered to pilot them to it. The men expressed their willing-
ness to accompany him and were taken to a place near the
kiln, the way leading across the walk connecting the platforms
before mentioned. While the men were eating their lunches,
the night watchman left them to attend to his ordinary
duties. After the lunch had been finished, and while the mill
was still dark, the men started to return to their place of
work. They had with them but the single lantern. The
respondent lead the way, walking slightly in advance of the
man who carried the lantern. On reaching the edge of the

platform he failed to note the exact dimensions of the connecting walk, and either missed the walk entirely or walked diagonally across a corner of it. The result was that he fell to the ground below and received the injury for which he sues.

The respondent rests his right to recover on the contention that he was ordered and directed by the mill company, through its night watchman, to eat his midnight meal at the dry kiln, and that the company had not furnished him with a reasonably safe way from his place of work to the kiln. We can find, however, nothing in the record which supports this contention. The record makes it plain that the night watchman had no power or authority to direct the movements or control the work of the planerman. While they each received their orders from a common source, their duties were separate and distinct, and neither was expected to interfere with the work of the other. The invitation given the respondent by the night watchman to eat his lunch at the dry kiln was not, therefore, a command of the master, and the master was not responsible for the accident that befell him while upon the way.

But it is said that the master owed the respondent the duty to provide him with a suitable place to eat his lunch, and that no such place was provided other than the one at the dry kiln. But this duty would not devolve upon the master in the absence of a special contract. Undoubtedly the appellant owed the respondent the duty to keep the approach to the mill, over which the respondent was required to go to reach his place of work, in such a condition as to enable him to go and return with reasonable safety in case he desired to eat his lunch at a place selected by himself, but this was the extent of its liability in that regard on a mere contract of hire. It did not owe him the duty of providing for him a suitable place in the mill in which to eat his lunch.

The judgment appealed from will be reversed, and the

11—61 wash.

cause remanded with instructions to enter a judgment in favor of the appellant to the effect that the respondent take nothing by his action.

RUDKIN, C. J., GOSE, MOUNT, and PARKER, JJ., concur.