## RIO BRAVO OIL CO. v. MATTHEWS.
### (No. 1872.)

Court of Civil Appeals of Texas. Beaumont. July 23, 1929.

Lamar Cecil and R. J. & O. T. Duff, all of Beaumont, for appellant.

Conley, Renfro & Keen, of Beaumont, for appellee.

WALKER, J. On March 12, 1928, and subsequent and prior to that date, appellant held a mineral lease on that part of the right of way of the Texas & New Orleans Railroad Company, about 500 feet long, which crosses

344

Spindletop oil field in Jefferson county, Texas. The lease extended only to that portion of the right of way not covered by the railroad track and roadbed. Appellant had no control or authority whatever over the railroad track, and its lease gave it no right of control. On the date mentioned appellant was operating this lease and had drilled a string of 25 or 30 wells on both sides of the track, within the limits of Spindletop oil field. The pictures offered in evidence of the wells drilled on the right of way show that none of the derrick floors encroached upon the roadbed. Well No. 54 was one of these wells, and appellee was an employee of appellant to work at this well. The railroad track furnished a convenient way by which appellant's employees could reach their work upon the right of way, but the track was not the only way. Appellant had constructed a plank road across the right of way, which could have been used by its employees in reaching the particular wells upon which each of them worked. A shelled road ran by the side of the right of way its full length across Spindletop oil field, and each of the employees could have traveled this road to a point opposite his well, and there entered upon appellant's premises and proceeded to his work. Had either of the two last-mentioned ways been used, the employees would not have used the track at all, except to cross it in order to reach the wells on the opposite side from the shelled road, or from the point where the road constructed by appellant entered its premises.

Notwithstanding these two last-mentioned ways, appellant had constructed approaches of plank from each of its wells to the railroad track. While it offered a different explanation for these approaches, the evidence raised the issue that the employees used them with the knowledge and consent of appellant as a way to go from the wells upon which they were working to the railroad track, and, having entered upon the railroad track, they used it, with the knowledge and consent of appellant, as a way to reach the premises where they were working and to leave these premises. Appellant did not urge nor ask nor insist nor require that its employees use the railroad track, or any particular way, to reach its premises. The evidence goes no further than to show that its employees were using the railroad track for this purpose with its knowledge and consent, and that they used the plank approaches from the wells to the railroad track with its knowledge and consent, and that it never made any objection to this use of the approaches, or to this use of the railroad track. Appellant had no control whatever over the trains being operated over the railroad track, and had no authority nor right to direct its employees to use the track, nor to restrain them from using it.

The railroad company had not given appellant's employees permission to use its track, nor had it objected to its use. The circumstances were sufficient to raise the issue that it was being used with the knowledge of the railroad company as a way, not only by the employees of appellant, but by other persons. Appellant had no contract, either express or implied, with its employees to furnish them a way to enter and depart from its premises. The choice of the way was wholly and absolutely optional with the employees, with no effort on its part to direct or control them in their choice. The most that can be said against appellant on the issue of choice of ways by its employees is that it knew and acquiesced in their use of the railroad track and roadbed, and of the approaches built by it from its wells to the railroad track, and never objected to this use, under circumstances from which an invitation may have been inferred.

The derrick floor of well No. 54 was built within 15 or 20 feet of the end of the crossties. The steam pump and steam engine used to operate this well were located between the derrick platform and the railroad track. The exhaust from the pump and steam engine was discharged directly across the railroad track, and created a cloud of steam so dense that one walking the railroad track could not see through it. This exhaust could have been, with reasonable care, controlled, so as not to be discharged, as it was, across the railroad track. Whether or not appellant had permission of the railroad company to discharge its exhaust across the track was not shown. The noise created by the operation and drilling of well No. 54 and the other wells upon the right of way was so great that one using the railroad track could not hear the noise of an approaching train, nor the ringing of the bell, but might have been able to hear the whistle. It was the custom of many of appellant's employees to ride out to their work in automobiles, and before entering upon their duties to go to a dressing room prepared by appellant upon its premises, and there change from their street clothes to their work clothes. This room was located in close proximity to the railroad track. After dressing for their work, it was the custom of many of the employees to leave the dressing room, walk from appellant's premises onto the railroad track, and walk down the railroad track to the particular plank approach that led from the railroad track to the well upon which they were working, and at that point leave the railroad track and follow the approach to the well.

On the date mentioned appellee was driven from his home to his work in an automobile, using for this purpose the above-mentioned public road. When he left the automobile, he went directly to the dressing room and there changed into his work clothes. Then he walked from the dressing room to the railroad track, got upon the railroad track, and walked down the track in a southerly direction for the purpose of reaching well No. 54. As he entered the steam exhaust above de-

scribed, which was so dense that he could not see through it, he was struck by a train being operated over the track, and was severely injured. At this point he was about 10 feet from the plank approach leading to well 54. This suit was by him against appellant for the damages suffered by reason of such injuries. He alleged that appellant was negligent in the following respects, each of which was submitted in due form to the jury as special issues and found in his favor, and each was found to be a proximate cause of the injuries sued for, to wit:

"(1) The failure of appellant to place a watchman on the premises near well No. 54 to warn its employees of the approach of trains.

"(2) The failure of appellant to place a signal lamp near well No. 54 to warn its employees of the approach of trains.

"(3) The failure of appellant to place a barricade along the railroad track on its premises, and on that part of the premises occupied by well No. 54, to warn and protect its employees from approaching trains.

"(4) The failure of appellant to place an electric bell on the part of the premises occupied by well No. 54 to warn its employees of the approach of trains.

"(5) The failure of appellant to place an electric signal on the premises occupied by well No. 54 to warn its employees of the approach of trains.

"(6) The failure to provide a way of leaving and entering the platform and well derrick of well No. 54 for its employees by the use of the railroad track.

"(7) The way provided by appellant for the use of its employees in leaving and entering well derrick No. 54 by the use of the railroad track.

"(8) (a) The discharge of the steam from the exhaust of the pumps and drilling machinery at well No. 54 in close proximity to the railroad track; (b) the discharge of the exhaust from the pump and engines of well No. 54 so as to obstruct the view of an approaching train by those using the railroad track; (c) the placing of the pumps so near the track that the steam from the exhaust obstructed appellee's view of the approaching train."

Appellant answered by general demurrer and specially that appellee's injuries "were solely and proximately brought about by reason of his own negligence." It was denied that it expected or wanted its employees to use the railroad track as a means of ingress to and egress from its premises, but provided for them a private way for this purpose, which it expected them to use. By using the railroad track, appellant alleged that appellee was guilty of negligence, which was the sole proximate cause of his injuries. It specially denied that its negligence, if any, was the proximate cause of appellant's injuries. Appellant did not plead the issue of contributory negligence.

It was agreed that appellant, though a nonsubscriber under the Workmen's Compensation Act (Rev. St. 1925, arts. 8306–8309), was entitled to its privileges and at its option could have been a subscriber. This issue was duly pleaded by appellee. He also pleaded that he was in performance of the duties of his employment at the time of his injuries. This issue was submitted to the jury and found in his favor. Answering special issues requested by appellant, the jury found that appellee was not guilty of negligence in walking down the railroad track at the time of his injuries. It was further found that the negligence of appellee, if any, was not the sole proximate cause of his injuries. The jury assessed appellee's damages at $50,000, exclusive of his doctor bills, which were in excess of $2,500, for which sum judgment was duly entered in his favor. The case is before us by appeal duly prosecuted by appellant from that judgment.

### Opinion.

This case was tried on the theory of master and servant, and the finding that appellee was injured while in the performance of his duties is the basis of the jury's verdict on issues Nos. 1 to 7, as given supra. Appellant's propositions attacking these findings and appellee's counter propositions in support thereof can be more satisfactorily disposed of by a general discussion of the substantive law of the case, without relating the discussion to any particular assignment.

■■ Was appellee in the performance of the duties of his employment at the time he was injured? He was not injured on his master's premises, but on his way to the premises. His master had not contracted with him, either expressly or impliedly, to furnish him a way for this purpose. At common law the master owes the servant no duty, in the absence of contract, to furnish this way. At his own peril the servant must make the choice, and while using the way selected by him the relation of master does not exist, and the master owes him no duty whatever springing from the law of Master and Servant. Baird v. Railway Co., 78 Wash. 67, 138 P. 325; Harris v. Railway Co., 69 W. Va. 65, 70 S. E. 859, 50 L. R. A. (N. S.) 706, Ann. Cas. 1912D, 59. Appellee's action was at common law, for on no other theory did he have any standing in court. As we construe the undisputed facts, appellee was not in the discharge of the duties of his employment when injured, and the jury's verdict on that issue is without support.

■■ If we correctly construe appellee's position, he claims the benefit of the duty owed a servant for the following reasons:

First. He says appellant was a nonsubscriber under the Workmen's Compensation Act,

and for that reason its liability is not measured by common-law principles. In this he is in error. That appellant was a nonsubscriber, under the Workmen's Compensation Act, was an immaterial issue on the affirmative allegations of his petition. The Workmen's Compensation Act added nothing whatever to his affirmative rights, nor did it relieve him of the duty of pleading and proving all the common-law essentials of the cause of action asserted. As between a servant and his nonsubscribing master, the only effect of the Workmen's Compensation Act is to abolish the defenses (a) of contributory negligence; (b) that the injury was caused by the negligence of a fellow servant; and (c) of assumed risk. Article 8306, § 1, Revised Statutes 1925. As in all actions at common law for personal injuries, appellee rested under the duty of pleading a duty owed him by appellant, a breach of that duty, and that such breach was the proximate cause of his injuries.

Second. He invokes the duty owed by the master for the servant's protection while in the discharge of his employment. While thus employed, the master owes the duty, at common law, of exercising ordinary care to furnish him a reasonably safe place in which to work, a reasonably safe means of access to and egress from the premises where he was employed, and a reasonably safe passage to and from his work while upon his premises. Staley v. Wehmeier, 187 Ky. 445, 219 S. W. 408; Strobel v. Gerst Bros. Mfg. Co., 148 Mo. App. 22, 127 S. W. 421; Dawson v. King (Tex. Com. App.) 222 S. W. 164. Appellant was not an insurer in these respects, but its duty was measured by the exercise of ordinary care. Taylor v. White (Tex. Com. App.) 212 S. W. 656. Appellee made these duties the basis of his cause of action. But, since he was not injured on his master's premises, none of these duties were breached.

Third. By building the plank approaches from its wells to the railroad track, and especially the approach from well 54, appellee says appellant invited him to use the track as a way. That the facts are sufficient to support a finding of invitation to use the railroad track invokes no legal liability. Appellant had no jurisdiction whatever over the railroad track; it had no jurisdiction over the way chosen by appellee beyond the end of the approach leading from the dressing room to the railroad track. When appellee stepped off this plank onto the railroad track, he entered a realm over which his master had no authority; a way to be used by him if he saw fit, simply as a member of the public at large; a way he could use or not as he might desire on his own volition. The invitation to be deduced from the facts, construed most strongly in appellee's favor, was not equivalent to a direction, and entailed no responsibility upon appellant. Allen v. Chehalis Lmbr. Co., 61 Wash. 159, 112 P. 338, 44 L. R. A. (N. S.) 1102.

█ Fourth. To quote from appellee's brief: "The Rio Bravo Oil Company was operating a lease that had dangers peculiar to the premises, all of which the company knew at the time it went on the lease to operate it." On the theory of master and servant, this proposition is wholly irrelevant. All dangers inherent in the work itself were assumed by appellee as incidents of his employment, even with the relation of master and servant existing. The assumed risk, abolished as a defense by the article of the Workmen's Compensation Act cited supra, is that risk created by the negligence of the master, and not that risk which is, in its very nature, incident to the duties which the servant has contracted to perform, and which exist after the master has performed fully and completely all his legal duties to the servant. West Lumber Co. v. Smith (Tex. Com. App.) 292 S. W. 1103. All the dangers, within the scope of appellee's proposition, were inherent in the work he was employed to perform, and existed independent of and not as incidents of appellant's negligence. But, if we are correct in defining the legal status between appellant and appellee at the time he was injured, the relation of master and servant did not exist, and therefore the legal effect of the dangers surrounding the place of the accident is not to be determined by the law of master and servant. The Workmen's Compensation Act, in all of its provisions, passes out of the case, and cannot be invoked by appellee for any purpose.

█ Fifth. Because he entered upon appellant's premises and there changed into his work clothes at a place provided by it for that purpose, appellee insists that he can claim the rights of a servant from the moment he entered the premises, and that he did not lose that right by using the railroad track as a way from the dressing room to well 54. He is correct in saying that appellant owed him the duty of a master when he entered upon the premises to change into his work clothes. Appellant owed him the duty, measured by the exercise of ordinary care, to furnish him a reasonably safe access to the premises for this purpose, a reasonably safe place to dress, and a reasonably safe way from the dressing room to well 54, provided he had chosen a way upon its premises. But he was not injured in entering the premises, nor in the dressing room, nor did he choose a way over appellant's premises. As he left the premises voluntarily, and used a way outside of the premises, as his master, appellant only owed him the additional duty to provide a reasonably safe egress from the premises to the railroad track and this duty was performed. In fact, no claim was made that this duty was breached. That the distance from the dressing room to well 54 was short is immaterial. When he voluntarily walked upon the railroad track, he severed the relation of master and servant, and could re-establish that rela-

tion only by re-entering his master's dominion. The undisputed facts show that he received his injuries before this was done.

█ At the time and place he was injured appellee was only a member of the public at large, and could invoke against appellant no fiduciary relation. To establish his cause of action, he was under the burden of pleading and proving all the common-law essentials required of a stranger, and there was available against him all the common law defenses to such an action. On all issues between him and appellant, appellee was rightfully upon the railroad track. Appellant knew that the track was being used, not only by its servants, agents, and employees, but also by the members of the public at large. Therefore it could not lawfully create or maintain a dangerous agency or obstruction across the track. This was a duty owed by it to the public. If this duty was violated, and if injury proximately resulted therefrom, it was bound to respond unless it pleaded and proved a defense good at law. On the principles thus stated, the issue of negligence was raised by discharging the exhaust from the pump and engine across the railroad track, and the verdict of the jury, convicting appellant of negligence on the three divisions of question No. 8, has support.

Appellant seeks to avoid the effect of these findings by the following propositions:

First. It says, as a matter of law, that appellee was guilty of negligence in walking into the exhaust, and that this was the sole proximate cause of his injury. We do not determine on this appeal whether the issue of negligence against appellee was one of law or of fact, because on the proposition of sole proximate cause it is immaterial. The jury found in effect that the act of appellee in walking into the exhaust was not the sole proximate cause of his injuries, and that finding has support in the evidence.

Second. It says that the act of the train in striking appellee was the sole proximate cause of his injury. That issue was one of fact for the jury.

Third. It says that negligence in discharging the exhaust across the track was not in law a proximate cause, and that the jury's verdict on this issue was without support, citing Texas & P. Ry. Co. v. Bigham, 90 Tex. 223, 38 S. W. 162, and Seale v. Railway Co., 65 Tex. 274, 57 Am. Rep. 602. In those cases the acts of negligence relied upon were held to be remote.

The Supreme Court said that the defendants, in law, were not required to foresee the injuries that resulted from the acts charged against them. But that is not appellant's case here. It knew the condition of the premises. It knew that the railroad track was being used as a way by many people. It knew that the railroad company was operating its trains upon this track. It knew that the exhaust was so dense as to obstruct the view of

one using the track. The finding that it should have foreseen the consequences of its act in discharging its exhaust as it did has support.

Issues Nos. 1 to 7, as pleaded by appellee, and found by the jury in his favor, were not raised by the facts. The only act charged that raised the issue of negligence was the discharge of the exhaust across the railroad track, as presented by the three subdivisions of issue No. 8. If this act was negligence, and no defense existed against it, appellee has established his cause of action. If this act was negligence, appellant could not have excused it by maintaining a watchman to warn the public using the track of approaching trains. If it was not negligence, then it owed the public no duty in relation thereto. This disposes of issue No. 1, and also of issues 2, 4, and 5.

The three issues last named could not have constituted negligence, for the further reason, that appellant had no control over the railroad track, no right to attach any signal to the rails and any effort on its part to do so would have been a trespass against the railroad company. Issue No. 3 suggests neither negligence nor proximate cause. Well No. 54 was 15 or 20 feet from the railroad track. The failure to build a barricade around this well violated no duty to the public using the railroad track, and the failure to have a barricade around well 54, whether negligence or not, was not a proximate cause of appellee's injuries. For the same reason issues 6 and 7 do not suggest negligence. Appellee was not injured entering or leaving appellant's premises. Therefore the condition of the approach or way from well 54 to the railroad track was not an issue in the case.

█ This brings us to the assignments of reversible error. Appellant complains of the trial court's definition of "proximate cause," which was as follows:

"'Proximate cause,' as used in this charge, is that cause which in natural and continued sequences unbroken by any efficient intervening cause produces the result complained of and without which that result would not have occurred, and in the light of the attending circumstances such result ought to have been foreseen by a person of ordinary care and prudence."

Appellant duly excepted to the court's refusal to define the terms "efficient intervening cause" and "natural and continued sequence," as used in this charge. We do not think the court erred in refusing to define the term "natural and continued sequence." These are ordinary words of simple meaning, and under the holding of the Commission of Appeals, expressly approved by the Supreme Court, in Robertson & Mueller v. Holden, 1 S. W.(2d) 570, the court was not required to define this term. In that case, construing article 2189, Rev. St. 1925, quoted in the opinion, Judge Speer said: "Ordinary words of sim-

348

ple meaning * * * need not be defined." The trial court, in the case just cited, in defining proximate cause, used the term "new independent cause." On appeal it was held that this was a technical term, with a well-defined meaning in law, and that the court's refusal to give a proper definition of this term in charge to the jury constituted reversible error. The reasons for this holding were given by Judge Speer in his opinion. In the case before us the term "efficient intervening cause" was used. While the two terms are not identical in language, appellee does not seek to distinguish their legal meaning, but, as we understand his position, admits that they have the same meaning in law, and that the Holden Case, supra, is in point supporting appellant's proposition of reversible error, provided the issue of proximate cause was in the case.

■■■■ Appellee would relieve this charge of error by the following propositions:

First. This being an action by a servant against a nonsubscribing master, he says the issue of proximate cause is not in the case. He assumes that the rights of the parties are controlled by the Workmen's Compensation Act. Our conclusion to the contrary disposes of this contention. But on this assignment of reversible error, even if we were in error on this point, the proposition is not sound. This exact proposition was before this court in West Lumber Co. v. Morris & Barnes, 257 S. W. 592, 596, and there decided by us against him. It is the law of that case that the plaintiff, in an action for personal injuries against a nonsubscribing master, must not only establish the issues of negligence against the defendant as pleaded, but must also allege and prove that the injuries complained of proximately resulted from such acts of negligence.

Second. He says proximate cause, if in the case, is an issue of law, and not of fact; if appellant was guilty of negligence, such negligence was, as a matter of law, a proximate cause of his injuries. This proposition is not sound. Under the Texas decisions, to quote from Judge Hightower's opinion in the Morris & Barnes Case, supra: "The issue of proximate cause in a suit for personal injuries claimed to have been negligently inflicted is usually one of fact for the jury's determination, and it is seldom that that issue can be properly and safely taken from the jury's consideration and decided by the trial court as a matter of law." The soundness of this proposition is sustained by the opinion of the Supreme Court in Wells Fargo & Co. v. Benjamin, 107 Tex. 331, 179 S. W. 513, and the opinions of the Commission of Appeals in T. & N. O. R. Co. v. Harrington, 235 S. W. 188, Skinner v. T. & N. O. R. Co., 238 S. W. 1110, and Pearson v. T. & N. O. R. Co., 238 S. W. 1108, wherein the judgments of this court, holding that the issue of proximate cause was one of law, were reversed by the Commission of Appeals, sustaining the granting of the writs on assignments challenging our holdings on this issue. In this particular case, independent of all authority, we do not think that appellant's proposition on this point could be supported. Clearly, reasonable minds might differ in determining whether any of the acts of negligence charged against appellant was a proximate cause of appellee's injuries. It was for the jury to say whether his own act in walking into the cloud of steam or the act of the railroad company was a proximate cause.

Third. Finally, he says there was no issue of an "efficient intervening cause," and therefore no error in not defining the term. He is also in error in this contention. No particular act of negligence charged against appellant, as a matter of law, was the proximate cause of appellee's injuries. But for his own act in walking into the cloud of steam, or the act of the railroad train in striking him, he would not have been injured. Each of these circumstances, and both of them combined, raised the issue of "efficient intervening cause." That issue being in the case, the jury could not properly determine it, without having this term defined. It is our conclusion that the failure to define the term "efficient intervening cause" constituted reversible error.

Appellant also complains of certain argument to the jury by counsel for appellee, and also that the verdict was excessive. Each of these is assigned as reversible error. As the case is being reversed on the assignment just discussed, it is not necessary to pass upon the merits of these assignments.

From what has been said, it follows that the judgment of the lower court must be reversed, and this cause remanded for a new trial.

Reversed and remanded.

Motion for rehearing dismissed because the case has been settled between the parties.