## WILSON et al. v. FISHER et al.
### No. 8427.

Court of Civil Appeals of Texas. Austin.
March 10, 1937.

Rehearing Denied April 28, 1937.

statutory authority (title 27, R.S.1925 [article 932 ct seq.]) by J. C. Wilson for himself and as guardian of the estate of his minor children, Woodrow Ollie Wilson, Elsie Mae Wilson, and Wallace Joe Wilson, seeking to review the order of the county probate court of Travis county, Tex., distributing and dividing the estate of a deceased World War veteran, John R. Fisher. The pertinent facts, transactions, and court proceedings are as follows:

John R. Fisher, a soldier in the United States Army, received a certificate of insurance for $10,000, issued by the United States through the bureau of war risk insurance. His wife, Mattie Ray Fisher, was named beneficiary. The said John R. Fisher, a resident of Travis county, Tex., died in France, October 12, 1918, intestate, leaving his wife as beneficiary named in the insurance certificate and as his sole heir under the laws of Texas. Under section 514, title 38, of the U.S. Code (38 U.S.C.A. § 514), the insurance was payable in 240 monthly installments of $57.50. After the death of the insured, the United States paid the monthly installments to his widow as Mattie Ray Fisher until she married J. C. Wilson, about one year later, and then paid the monthly installments to her as Mattie Ray Wilson until her death, April 23, 1929, at which time the commuted value of the balance due on the certificate was $5,558. The heirs of Mattie Ray Wilson were her second husband, J. C. Wilson, and the three children of this marriage, namely, Woodrow Ollie Wilson, Elsie Mae Wilson, and Wallace Joe Wilson; all minors. Under the provisions of section 514 of title 38 U.S.Code (38 U.S.C.A. § 514) as now determined, where the wife was the sole heir of the soldier at the time of his death, the commuted value of the war risk insurance after the death of the wife was payable to her heirs; and under the laws of Texas one-third of the commuted value of the insurance passed to her second husband, J. C. Wilson, and two-thirds passed to their three above-named minor children. Rev.St.1925, arts. 2571, 3314; Singleton v. Cheek, 284 U.S. 493, 52 S.Ct. 257, 76 L. Ed. 419, 81 A.L.R. 923. However, after the death of the said Mattie Ray Wilson, Ed. Fisher applied to and was on July 22, 1929, appointed by the county court of Travis county, Tex., temporary administrator of the estate of the said John R. Fisher, deceased, with authority to collect the $5,558 balance due by the United States on the certificate of insurance; and the

Mathes & Bonney, of Houston, and Cofer & Cofer, of Austin, for appellants.

Bryan Blalock, Polk Shelton, and G. F. Zimmerman, all of Austin, for appellee Ed Fisher.

Walter Greig, of Austin, for appellee Amanda J. Fisher.

BLAIR, Justice.

This proceeding in certiorari was filed in the district court of Travis county under

United States paid said sum to the temporary administrator.

On September 25, 1929, J. C. Wilson, for himself and as next friend of his three minor children above named, filed an application and motion in said probate cause, alleging that on the date of the death of John R. Fisher his wife was his sole heir; and that at the date of her death the said J. C. Wilson and their three minor children above named were her only heirs; and prayed that Ed Fisher, as temporary administrator, be required to pay the commuted value of the insurance ($5,558), one-third to J. C. Wilson and two-thirds to the minor children, or to their legal representatives. In answer to this application and motion, Amanda J. Fisher, the mother of said John R. Fisher, deceased, filed a general demurrer and a general denial, and prayed that J. C. Wilson and said three minor children take nothing.

On December 21, 1929, Amanda J. Fisher, the mother of the insured John R. Fisher, deceased, and J. C. Wilson, for himself and as next friend of said minor children, and their attorneys, respectively, entered into an agreement, for the distribution and division of the $5,558 of insurance theretofore paid to the temporary administrator by the United States. Thereafter J. C. Wilson, for himself and as next friend of his said minor children, and Amanda J. Fisher, together with their attorneys, appeared in the pending probate cause and filed the written agreement therein, and prayed that the court approve same; and the order of the court entered pursuant to the agreement, and upon motion of the temporary administrator to be discharged, omitting formal parts, reads as follows:

"On the 6th day of January, A. D. 1930, came on to be heard the matter of the motion of J. C. Wilson for himself and as father and next friend of Woodrow Ollie Wilson, Elsie May Wilson, and Wallace Joe Wilson, being a motion to set aside funds in the hands of the temporary administrator herein, said application and motion having been filed herein on September 25, 1929, and it appearing to the court that the said J. C. Wilson acting for himself individually and as father and next friend as aforesaid and Mrs. Amanda J. Fisher have reached an agreement in regard to the matter embraced in said motion and with regard to the division of the estate in the hands of the temporary administrator, said agreement being duly filed herein and all

parties being represented by their attorneys of record and the court having duly considered said motion and the answer of Mrs. Amanda J. Fisher to said motion and the agreement aforesaid finds that the distribution and division provided and agreed upon in the agreement aforesaid is fair and equitable and that all of the heirs at law of the said John R. Fisher are embraced in the terms of said agreement and are before the court;

"It is thereupon ordered, adjudged and decreed that the money collected by Ed Fisher, the temporary administrator herein, being the sum of Five Thousand Five Hundred Fifty-eight ($5,558.00) Dollars be applied and disbursed as follows: 1. To the costs of court and to the payment of commission of said temporary administrator which commission is hereby fixed at the sum of $277.90. 2. To the payment of the attorneys' fees for the attorney of the said Mrs. Amanda J. Fisher and said temporary administrator, being Bryan Blalock, which attorneys fee is hereby fixed at Two Hundred Fifty ($250.00) Dollars. 3. To the payment of the attorneys of the said J. C. Wilson, Woodrow Ollie Wilson, Elsie May Wilson and Wallace Joe Wilson, being A. M. Felts, W. Trenckmann and Roy C. Archer, which attorney's fee is hereby also fixed at the sum of Two Hundred Fifty ($250.00) Dollars. The balance to be divided as follows: one-half (½) to Mrs. Amanda J. Fisher; one-sixth (⅙) to J. C. Wilson; one-third (⅓) to said Woodrow Ollie Wilson, Elsie May Wilson and Wallace Joe Wilson, being one-ninth (⅑) to each of said minors.

"And it is ordered and decreed that said temporary administrator deposit the entire sum of Five Thousand Five Hundred Fifty-eight ($5,558.00) Dollars so collected by him in the registry of this court and that the County Clerk disburse the same in accordance with the terms of this decree, the share of the said three minors to be paid by the clerk to the legal guardian of the estate of said minors.

"The court having duly considered the said report of said temporary administrator herein filed and all exceptions and objections thereto, find that said report is complete and correct and complies with the law in all respects and it is hereby ordered, adjudged and decreed that said report be and it is hereby in all respects approved and ordered recorded in the Probate Minutes of this court.

"And it further appearing to the court that said temporary administrator has now deposited said sum of Five Thousand Five Hundred Fifty-eight ($5,558.00) Dollars into the registry of this court as above directed, it is, therefore, ordered, adjudged and decreed that said temporary administrator is hereby finally released and discharged from his trust and he and the sureties on his bond are relieved of all further liability in this matter and this case is hereby closed and dropped from the docket."

It seems that the temporary administrator paid and distributed the insurance as directed by this order, except the minors' portion of the $5,558 was later delivered to J. C. Wilson, who had subsequently qualified as the guardian of their estate. Thereafter, J. C. Wilson, for himself and as guardian of the estate of his minor children above named, filed this application in the district court for writ of certiorari to review the order of the county probate court distributing and dividing the estate in accordance with the agreement, upon the following grounds:

a. That the compromise agreement was void, because J. C. Wilson, as father and next friend of said minors, had no power, right, or authority to enter into said contract and to bind said minors by said contract.

b. That the order of the probate court approving said compromise agreement and ordering the temporary administrator to pay out the estate of the said John R. Fisher, deceased, in accordance therewith was null and void, and in no way binding upon said minors, because they had no legal guardian and were not represented by any guardian, and their father and next friend had no power and authority to represent them in such proceeding, or to make such contract for them.

c. That the order was void because Ed Fisher as temporary administrator had no power or authority to enter into said settlement and the court was without power, authority, or jurisdiction in such temporary administration to enter and make such order.

d. That in paying to Mrs. Amanda J. Fisher one-half of said money, totaling the sum of $2,729, the said Ed Fisher as temporary administrator exceeded his power and authority because of breach of duty in making such payment, and because the balance of the insurance due John R.

Fisher under said certificate was under section 514, title 38, U.S.Code (38 U.S.C.A. § 514), payable to his estate, and was required to be distributed to his heirs according to the laws of descent and distribution of the state of Texas as of the date of the death of said John R. Fisher, and not as of the date of the death of his widow, Mattie Ray Wilson; and that under the laws of descent and distribution of Texas Mattie Ray Wilson was the sole and only heir of John R. Fisher, deceased, on the date of his death; and on the date of her death the $5,558 passed, one-third to her second husband, J. C. Wilson, and two-thirds to the three children of this marriage, Woodrow Ollie Wilson, Elsie Mae Wilson, and Wallace Joe Wilson.

The hearing on certiorari was upon agreed or stipulated facts, substantially as above detailed, from which the district court found all grounds urged for revising and correcting the order, judgment, or decree of the probate court against appellant J. C. Wilson, for himself and as guardian of his minor children; the district court approving and adopting as its own the order, judgment, and decree of the probate court complained of, and certifying this judgment to the probate court for observance; hence this appeal.

The questions will be confined to the minors because J. C. Wilson for himself did not file his petition for certiorari within two years after the proceedings complained of were had in the probate court, as provided by article 932.

Fourteen propositions are presented, some of which are mere statements of law, and the remaining complain of the action of the court in refusing to sustain the four above-stated grounds relied upon in the petition for revision and correction of the order or judgment of the probate court. We have reached the conclusion that the judgment of the trial court should be affirmed, and will discuss the propositions presented without reference to the order in which appellants present them.

The contention that the trial was not de novo in the district court is not sustained. It was upon agreed facts and the judgment recited the finding and conclusion of the court on each of the four grounds urged in the petition for certiorari. The findings of fact and conclusions of law by the trial court also show its adjudication of the matters de novo. The proceedings were in accordance with

articles 932, 933, and 939, R.S.1925, relating to and providing for the method of reviewing orders of the probate court by the district court on certiorari. And the rule is settled that "on certiorari to review probate court order, district court must confine its inquiry to grounds of attack stated in application for writ, though trial is de novo." Mathews v. Autry (Tex. Civ.App.) 65 S.W.(2d) 798; Schwind v. Goodman (Tex.Com.App.) 221 S.W. 579; Johnson v. Coit (Tex.Civ.App.) 48 S.W. (2d) 397.

■ Nor is it material whether J. C. Wilson as next friend had the authority to enter into the compromise and settlement agreement for his minor children, independently of court action authorizing him to do so. The proceeding complained of was instituted on the intervention, application, and motion of said J. C. Wilson for himself and as next friend of his minor children to require the temporary administrator to pay the insurance funds in question to them. This application or motion was contested by Amanda J. Fisher, mother of the insured soldier. These parties and their attorneys of record then entered into the compromise and settlement agreement; which they later filed in the probate court and requested its approval, which was done, the court directing that the insurance be paid in accordance with the agreement, after reciting in the judgment that the agreement was fair and just under the facts to the minors. The proceeding was in the nature of an action or suit by the father for himself and as next friend of his minor children; and under the issues joined by the pleadings the action was in the nature of a proceeding for partition and distribution of the estate in administration, to determine who were the heirs of Mattie Ray Wilson and John R. Fisher, and to determine the right of each party to the insurance funds in the hands of the temporary administrator, and his final accounting therefor. See in this connection articles 3590 to 3597, which confer full power and jurisdiction upon the county court, either in a pending administration of a decedent's estate, or where no administration is pending, to "determine and declare * * * who are the heirs and only heirs of such decedent, and their respective shares and interests * * * in the estate of such decedent." Article 3590. And articles 3598 to 3633 provide for the partition and distribution of an estate by the court in which the administration is pending. Thus general jurisdiction and power was and is conferred upon the probate court to adjudicate all matters herein complained of.

A father may maintain an action or suit as next friend of his minor children under the common law, and may maintain and compromise such action or suit under express authority of article 1994, R.S.1925, the material portion of which reads as follows:

"Minors * * * who have no legal guardian may sue and be represented by 'next friend' under the following rules:

"1. Such next friend shall have the same rights concerning such suits as guardians have. * * *

"2. Such next friend or his attorney of record may with the approval of the court compromise suits and agree to judgments, and such judgments, agreements and compromises, [and] when approved by the court, shall be forever binding and conclusive" on the parties. Benavides v. Garcia (Tex.Com.App.) 290 S.W. 739; Dr. Pepper Bottling Co. v Rainboldt (Tex.Civ. App.) 40 S.W.(2d) 827; Crane County v. Bates, 126 Tex. 470, 90 S.W.(2d) 243; Greathouse v. Ft. Worth & D. C. Ry. Co. (Tex.Com.App.) 65 S.W.(2d) 762.

Under the common law and the above statutes, a next friend may also represent a minor in suits or actions in the probate court. Harbison v. Harbison (Tex. Civ.App.) 56 S.W. 1006 (writ ref.); Holland v. Couts, 100 Tex. 232, 98 S.W. 236, wherein the court held that a suit in the county probate court in behalf of an insane person to set aside a will was properly brought by next friend. And in Mitchell v. Thompson (Tex.Com.App.) 292 S.W. 862, 863, wherein it is held that "the powers, rights, and duties of one suing as next friend for and in behalf of minors are by statute [article 1994] made to conform to those of a guardian."

The proposition is made that the probate court had no authority or power to require the temporary administrator to pay out and distribute the funds to the persons entitled thereto under the compromise agreement approved by the court. The statute relating to temporary administrations provide for such procedure.

Article 3375 provides: "The order of the court in making such appointment shall state that unless the same is contested at the next regular term of the court, after service of citation, the same shall be made

permanent, provided the court is of the opinion that a permanent administrator is necessary."

Article 3380 provides: "At the expiration of the time for which a temporary administrator has been appointed, he shall file with the clerk of the court, duly verified, a list of all property of the estate which has come to his hands, a return of all sales made by him, and a full exhibit and account of all his acts as such administrator."

Article 3381 provides: "The list, return, exhibit and account filed by the temporary administrator, shall be acted upon by the court, and whenever temporary letters shall expire, or cease to be of effect from any cause, the court shall immediately, either in term time or vacation, enter an order upon the probate minutes requiring such temporary administrator to forthwith deliver the estate remaining in his possession to the person legally entitled to the possession of the same."

Notice of the appointment of the temporary administrator was published, citing "all persons interested in the welfare of the estate," as required by article 3376, R.S.1925. This notice or citation was returnable October 7, 1929. In the meantime this proceeding in the nature of a partition and distribution of the funds, and for proof of heirship was instituted. The probate court made no further orders in the temporary administration until it determined upon the agreement of the parties and hearing of the court thereon, who were the heirs entitled to the funds, and upon determining such issues immediately directed the temporary administrator to pay out the funds as directed by the court. This order was made January 6, 1930, and on the same day the temporary administrator paid out the funds as directed, except he paid the portion awarded to the minors into the registry of the probate court. On the following day, January 7, 1930, J. C. Wilson was appointed guardian of his said minor children by the same court and the funds deposited for them in the registry were under order of the court paid to J. C. Wilson as their duly appointed guardian.

This action of the probate court was tantamount to the extension of the temporary administration for the purpose of final settlement of the estate, · and was in accordance with the provisions of article 3381, and was "an order * * * requir-

ing such temporary administrator to forthwith deliver the estate remaining in his possession to the person legally entitled to the possession of the same."

█ If any other notice than that of the appointment of the temporary administrator were necessary, as contended by appellants, for the final accounting and settlement of the temporary administrator, appellants are in no position to complain, because they voluntarily came into the court, started this proceeding, and invoked the jurisdiction of the court to determine all issues that were determined and of which the court had jurisdiction to determine. Heavey v. Castles (Tex.Civ.App.) 12 S.W.(2d) 615 (error ref.)

██ It is contended that the probate court had no authority to require the temporary administrator to pay the portion of the insurance awarded to the minors into the registry of the court. This is not sustained because the general rule is that a judgment for the sole benefit of minors should be paid into the registry of the court, and that this is particularly true where the minors are represented in the suit by next friend under the terms of article 1994. Harllee v. State (Tex.Civ. App.) 18 S.W.(2d) 1091. The undisputed record in the instant case shows that no harm resulted by reason of the judgment directing the temporary administrator to pay the minors' portion of the insurance awarded them under the compromise agreement and judgment approving it into the registry of the court; because on the following day the clerk of the court, in accordance with the order, paid appellant J. C. Wilson, who had on that day by the same court been appointed and qualified as guardian of said minors, the minors' funds.

█ Nor did the court err in approving the portion of the compromise agreement providing for the payment of $250 attorney's fees to the attorney of record for J. C. Wilson, as next friend of the minors. The record shows that one-third of this fee was paid by appellant Wilson out of his portion of the insurance, and two-thirds out of the portion of the insurance awarded to the minors. The law is settled that a fee is properly allowed attorneys selected by next friend and recognized by the court from the recovery of the minors, in a suit brought for them under the provisions of article 1994. Holloway v. McIlhenny

Co., 77 Tex. 657, 14 S.W. 240; Rogers v. Rogers (Tex.Com.App.) 240 S.W. 1104.

 Nor is there any merit to the contention that because the father was himself interested in the proceeds he could not appear as next friend for the minors and could not make the compromise agreement which was approved by the judgment of the trial court for said minors. The law is settled that a parent of a minor may prosecute an action in the dual capacity of next friend of the minor and of plaintiff in his own right. It is also recognized that in such a case the next friend may make a compromise agreement, provided that in making same his interest is not preferred to the detriment of the minor. In the instant case the laws of descent and distribution fix the respective amounts due the father and his minor children from the insurance funds, and the undisputed record shows that the compromise agreement and the judgment approving it ascertained the ratio to which the father and minors, respectively, were entitled under the compromise agreement. Thus it appears that there was no conflict between the interest of the next friend and the minors, but their interest in the recovery was identical to the extent of their respective prorations of the recovery. · Dr. Pepper Bottling Co. v. Rainboldt (Tex.Civ.App.) 40 S.W.(2d) 827; Humble Pipe Line Co. v. Kincaid (Tex.Civ.App.) 19 S.W.(2d) 144 (error ref.); Gulf, C. & S. F. Ry. Co. v. Lemons, 109 Tex. 244, 206 S.W. 75, 5 A.L.R. 943.

 This brings us to the main issue of the appeal, to wit, the validity of the compromise and settlement agreement and the order or judgment of the court approving same. It was not alleged that the compromise agreement and the order or judgment approving it were executed because of fraud or bad faith of the father or next friend, or of any one; but appellants contend that the facts alleged in the petition ·for certiorari show that the compromise agreement and the order or judgment approving it and directing that the insurance funds be paid out in accordance therewith, were made, entered, and done as the result of a mistake of law. We have reached the conclusion that this contention cannot be sustained, and hold that at the time of the compromise agreement and the order or judgment approving same, and the funds paid out in accordance therewith, there were sufficient grounds to support the compromise agreement and the order or judgment approving it.

At the time the compromise settlement was made and the order or judgment entered approving it, and at the time the funds were paid out by the temporary administrator under direction of the agreed judgment, the question had arisen in a number of state courts as to whether those entitled to "the estate of the insured" under section 514, title 38, U.S.Code, as amended March 4, 1925 (38 U.S.C.A. § 514), should be determined as of the date of the death of the insured, or as of the date of the death of the beneficiary. Most of the state courts and the federal circuit courts passing upon the question had held that the date of the death of the insured was the time by which such question should be determined, · and not the date of the death of the beneficiary. 55 A.L.R. 596, and cases there cited. However, on the date the agreement in question was made and approved by the judgment, the decisions of the Supreme Court of Kentucky in the cases of Sutton's Ex'r v. Barr's Adm'r, 219 Ky. 543, 293 S.W. 1075, and Sizemore v. Sizemore's Guardian, 222 Ky. 713, 2 S.W.(2d) 395, were directly contrary to the above view. Later in the case of Mefford v. Mefford, 231 Ky. 127, 21 S.W. (2d) 151, the Kentucky court apparently disagreed with its earlier view; but did not expressly or directly do so until its decision in Mason's Adm'r v. Mason's Guardian, 239 Ky. 208, 39 S.W.(2d) 211, 214; which decision was after the compromise agreement and judgment approving it had been fully executed. The Supreme Court of Washington in Cross v. State (1929) 152 Wash. 459, 278 P. 414, and the Supreme Court of Ohio in Tax Comm. v. Rife (1928) 119 Ohio St. 83, 162 N.E. 390, had apparently disagreed with the majority view on the question at issue. While the Court of Civil Appeals in Battaglia v. Battaglia, 290 S.W. 296, had agreed with the majority view, the Supreme Court of Texas had granted a writ of error and that case was pending when the compromise agreement and the judgment approving it were made and entered. The Supreme Court of the United States. had not passed directly upon the question at the time involved in this case, and did not do so until February 15, 1932, when it expressly approved the majority view, with the statement that "the state courts, with almost entire unanimity, have reached

the same conclusion." Singleton v. Cheek, 284 U.S. 493, 52 S.Ct. 257, 259, 76 L.Ed. 419, 81 A.L.R. 923. This case put at rest the divergent views, but it was more than two years after the compromise agreement and judgment in the instant case were fully executed. In the meantime, the Oklahoma court followed the minority view in its opinion in Singleton v. Cheek, supra; and two other state courts had apparently disagreed with the majority view. In re Hallbom's Estate, 179 Minn. 402, 229 N.W. 344; In re Fisher's Estate, 302 Pa. 516, 153 A. 736.

From the facts presented the trial court found that the Supreme Court of the United States had not construed the statute in question at the time the compromise agreement and the order and judgment approving it were made and entered; and that the construction of the statute was uncertain, and further concluded, as follows: "That there is no plea of or evidence of said agreement having been the result of mistake, accident, misrepresentation or fraud; that it appears from said agreement and the order complained of that the rights of said minor plaintiffs herein were properly protected, by their next friend acting on their behalf, by the attorneys recognized by the court as representing said minors, and by the court; that under the condition of the law as it then existed, said agreement and said order of the court complained of were to the best interest of the minor plaintiffs herein; and that said order should be by this court sustained, and judgment entered by this court accordingly."

It is manifest that the parties did not act upon a mistake of law in making and having the compromise agreement approved by the court. But they acted upon the unsettled condition of the law applicable. Much delay would have resulted in taking the case to the Supreme Court of the United States, and such procedure would have been expensive. This would have been necessary before the funds or any part thereof could have been paid to the minors, in absence of the compromise agreement and its approval by the court. Under such facts and circumstances, our courts have uniformly upheld compromise agreements approved by the court made with infants properly represented by a next friend, or his attorney of record, in absence of any plea or proof of fraud, bad faith, accident, or mistake in making the agreement or having same approved by the court. A clear statement of the rule is made in the case of Thompson v. Maxwell Land Grant & Ry. Co., 168 U.S. 451, 18 S.Ct. 121, 126, 42 L.Ed. 539, as follows:

"It would be strange, indeed, if, when those authorized to represent minors, acting in good faith, make a settlement of claims in their behalf, and such settlement is submitted to the proper tribunal, and, after examination by that tribunal, is found to be advantageous to the minors, and approved by a decree entered of record, such settlement and decree can thereafter be set aside and held for naught on the ground that subsequent disclosures and changed conditions make it obvious that the settlement was not in fact for the interests of the minors, and that it would have been better for them to have retained rather than compromised their claims. If such a rule ever comes to be recognized, it will work injury rather than benefit to the interests of minors, for no one will make any settlement of such claims, for fear that it may thereafter be repudiated. The best interests of minors require that things that are done in their behalf, honestly, fairly, upon proper investigation, and with the approval of the appropriate tribunal, shall be held as binding upon them as similar action taken by adults."

Texas cases to the same effect are: Greathouse v. Ft. Worth & D. C. Ry. Co. (Tex.Com.App.) 65 S.W.(2d) 762; Griggs v. Brewster, 122 Tex. 588, 62 S.W.(2d) 980; 23 Tex.Jur. 760, § 64, and cases there cited.

By supplemental brief appellants contend that the compromise agreement and its approval by the court constitutes an assignment of the insurance in violation of section 454, title 38, U.S.Code (38 U.S.C.A. § 454), providing that "the * * * insurance * * * payable under Parts II, III, and IV, respectively, shall not be assignable," citing Robertson v. McSpadden (D.C.) 46 F.(2d) 702, as supporting the contention. This inhibition against assignment does not extend beyond the insured and his beneficiary. It does not extend to commuted insurance due the heirs of the deceased soldier's deceased beneficiary. State of Kansas ex rel. Boynton v. Board of Com'rs, 283 U.S. 855, 51 S.Ct. 648, 75 L.Ed. 1462; Bostrom v. Bostrom, 60 N.D. 792, 236 N.W. 732. The purpose of the section is to afford continuous support of the soldier or his benefi-

ciary against their own improvidence, and beyond them it is unenforceable. Yoke v. Yoke, 170 Md. 75, 183 A. 555; Irwin v. Irwin, 179 Ga. 491, 176 S.E. 484.

We find no error requiring a reversal of the cause and it is affirmed.

Affirmed.