**BOOTH TERMITE & CHEMICAL CO. v. MANUEL.**

No. 3566.

Court of Civil Appeals of Texas. Beaumont.
Jan. 26, 1940.

Rehearing Denied March 13, 1940.

858

H. C. Cunningham and E. B. Votaw, both of Beaumont, for appellant.

Elton Cruse, of Beaumont, for appellee.

O'QUINN, Justice.

This suit was filed by A. J. Manuel for himself and as next friend for his minor daughter, Marlene Manuel, against T. E. Booth, doing business under the trade name of Booth Termite & Chemical Company, to recover damages to his said minor daughter, occasioned by the alleged negligence of appellant in leaving sulphuric acid in a milk bottle on the premises of appellee which bottle was picked up by the minor daughter, Marlene Manuel, some seven years old, and the acid in said bottle accidentally spilled on the clothes and person of the said minor.

The case was tried to a jury upon special issues, on the answers to which judgment for appellee was entered in the sum of $1,100, from which judgment appellant brings this appeal.

Appellant's request for an instructed verdict is overruled. Issues of fact were raised by the pleadings and evidence, and so an instructed verdict could not be granted.

The assignment that the court's definition of "new and independent cause" amounted to a general charge, and constituted reversible error, is without merit. The term was used in the definition of "proximate cause" used in the submission of special issue No. A–3. It was authorized and required by Article 2189, R.S.1925, and so could not be termed a general charge.

There was no error in permitting the introduction of a dress alleged to have been worn at the time she received her injuries. The contention, in the main, is that the dress was not properly identified. We think the identification was sufficient, and also that the dress was in the same condition when offered as immediately after the accident.

■ Assignments of error Nos. 7, 8, 9, and 10 relate to the issues submitted on the question of exemplary damages. The jury answered all these issues in favor of appellant. No harm resulted from their submission.

■ We overrule appellant's contention that the court committed reversible error in his definition of "new and independent cause." The definition was sufficient. Moreover, we do not believe the question of a "new and independent cause" was raised by the evidence.

■ In defining "new and independent cause" the court used the expression "intervening efficient force." This expression was not defined, and appellant objected to said definition because the term "intervening efficient force" was not defined. In Rio Bravo Oil Co. v. Matthews, Tex.Civ. App., 20 S.W.2d 342, and Blanche v. Villiva, Tex.Civ.App., 22 S.W.2d 490, failure to define this term was held reversible error. Believing that the question of "new and independent cause" or "intervening efficient force" was not raised by the evidence, the error was harmless.

■ Several assignments are levelled against the submission of special issues A–1, A–2, and A–3 to the jury, the complaint being that the use of the words "substantial quantity" of "strong sulphuric acid", was improper because there was no evidence to show the quantity of acid left in the bottle, nor to show the strength of the acid, if the liquid was sulphuric acid.

Special issue No. A–1 reads: "From the preponderance of the evidence, do you find that the Booth Termite Company on or about June 3, 1938, left a substantial quantity of strong sulphuric acid in plaintiff's milk bottle on the back steps of plaintiff's apartment?" The jury answered "Yes." There was evidence that there was a liquid called sulphuric acid in the bottle. The issue submitted inquired as to whether there was a "substantial quantity" left in the bottle. No definition of "substantial quantity" was requested. It is not believed that this was error. As to the expression "strong sulphuric acid" there was evidence that the liquid in the bottle was sulphuric acid, and that it burned or destroyed the cotton fabric of the child's dress where it came in contact with it and also burned the parts of the child's body where it touched same. We do not believe there was reversible error if error at all. The

assignment that the charge was on the weight of the evidence is without support in the objections taken to the charge.

Assignment of error No. 5 reads: "The court committed reversible error in permitting the witness A. J. Manuel to conduct an experiment before the jury as to the effect a certain fluid produced in court by himself would have on cloth or ordinary fabric, claiming said fluid to be sulphuric acid such as was used at the fire station and at the same time admitting that he was not a chemist and was not experienced in handling such acid, over the objection of appellant, to the effect that said experiment should not have been permitted unless it was first proven that such fluid was in fact sulphuric acid and of substantially the same strength and quality of the acid which is alleged to have injured Marlene Manuel."

The record discloses that Mr. Manuel was an employe of the City of Beaumont in the Fire Department, and worked at a fire station near the apartment in which he with his family lived. His apartment was on the ground floor. There was an apartment upstairs right over his apartment. The Booth Termite & Chemical Company (Mr. T. E. Booth) was employed to exterminate certain insects in this upper apartment. Booth sent one of his employees to the premises at about 8:30 or 9 o'clock in the morning for the purpose of performing the services. This employee explained to Mrs. Manuel what he was going to do, and that the fluid used was dangerous, if inhaled, and requested her to take her daughter, the injured girl about seven years old, and go away from the premises and remain away all of the day. Mrs. Manuel and her little girl went away. She told the man that her milk bottles were in the house, and he asked her to set them on the outside, which she did. When she returned she came to the rear of the apartment and picked up two of the milk bottles and the little girl picked up two, one in each hand, on the back steps and they started to get in their car. One of the bottles that the little girl picked up had a watery looking fluid in it, and when she started to pour out the fluid in the bottle some of it spilled on her and burned her clothing and her person. Marlene, the little girl, began to scream and her mother saw that the clothes "began to have holes in them" and told her to run to her father at the fire station which was right near by. Her father met

860

her and she was given first aid treatment. The fluid was spilled all down the front of her dress and on her legs. She was taken immediately to a doctor who treated her.

On the trial counsel for appellee desired to perform an experiment before the jury to illustrate the effect of sulphuric acid on cotton cloth, and was preparing to do so when objection was made by appellant. Among other things, the following took place:

"Mr. Cruse: Your Honor, I made some inquiry a while ago for one of these little glass things like water pitchers used to sit in, but I haven't been able to locate any. I would like to ask Mr. Bergman if he knows of one of those being around here. I would like to make some experiments.

"Mr. Votaw: I think we have got one and we can accommodate you. Now we are going to see the big smoke.

"Mr. Cunningham: (Holding up bottle) Wouldn't you like to use this?

"Mr. Cruse: No; I am conducting this experiment.

"Mr. Votaw: Do we understand counsel is going to submerge this dress or a part of in this liquid over here?

"Mr. Cruse: That's my intention.

"Mr. Votaw: Your Honor, we object to that on this particular piece of evidence here; this is introduced in evidence, this item, and we want this certified to the Court of Civil Appeals if this case is appealed, and we don't want it defaced; and furthermore we don't want it submerged in this acid unless it is proved that this acid is the same, contains the same strength of acid as that was in the milk bottle that he claims to have been in Mr. Booth's possession.

"Mr. Cruse: I don't like to use this handkerchief.

"Mr. Votaw: Now, if he is going to use this acid here, we are going to object to any demonstration before the jury of this acid over here, unless it is proved that this is sulphuric acid and it is the same strength that they claimed Mr. Booth used on this house. This may be much stronger acid; it may burn that stuff completely up, or anything of that kind that the acid that he used might not have. This man says he can't tell whether it is the same; he is no chemist, and that it would have to be tested.

"Mr. Cruse: He did state though that it acts similarly to what this acid did.

"The Court: Well, it is in evidence before the jury, what the effect of the other was. I will sustain the objection to the exhibit, but as to the other, I will permit it.

"Mr. Votaw: In this particular stuff here?

"The Court: Yes, sir.

"Mr. Votaw: We want to get our objection clear. We object to this experiment for the reason it is not shown that this acid, if it is acid, is of the same strength of the acid which plaintiff claims to have been left at his premises.

"Mr. Cunningham: And high prejudicial. And shows no connection between the liquid that fell on the girl and the matters now before the jury. Further, that the witness is not qualified to testify as to the contents, that the two bottles are in any way identical, or have the same chemical contents.

"The Court: Overruled. The Court will permit the experiment for the purpose of demonstrating before the jury what action on cotton cloth the stated percent of sulphuric acid will have.

"Mr. Cunningham: Note our exception, and further object to it because that is immaterial. If it is not shown that the acid that is alleged to have fallen on the girl is of like character as that with which the demonstration is made; otherwise it would be immaterial and prejudicial."

The experiment was made with sulphuric acid obtained from the fire station. There was no testimony showing the respective strengths of the acid used by Booth Termite & Chemical Company in their exterminating work, and that obtained from the fire station with which the experiment was made. The assignment is without merit. The undisputed evidence shows that sulphuric acid was used by appellant in the work done at the apartment on the day of the accident, and that some was left in a milk bottle on the rear steps of appellee Manuel's apartment, and that Marlene Manuel, the seven year old daughter of appellee picked up the bottle with the acid in it and accidentally spilled some of the acid on her dress in front and upon her person, and that the acid burned up or destroyed the dress, which was of cotton fabric, where it touched it, and also burned her body and legs, causing blisters where it came in contact for which she was treat-

ed by a doctor. The experiment was performed in the presence of the jury for the purpose of showing the effect of sulphuric acid on cotton cloth and to account for the injury to her person. The sulphuric acid with which the experiment was made was obtained at the fire station where Manuel worked, and with which he was familiar. While it was not shown that the sulphuric acid used in the experiment was of the same degree of strength as that spilled on the child, the effect was the same—burned or destroyed the cloth in the same manner as did that spilled on the dress of the girl. The effect of sulphuric acid on cotton cloth or flesh of a person had already been established by the evidence of witnesses who testified to the acid getting on the clothes and person of the child, and its effect. And, too, the bottle with some of the acid in it was taken immediately after the accident to the fire station and some of the fluid in the bottle was poured on cotton cloth and it burned or destroyed the cloth. This established the fact sought to be proved by the experiment. It seems to be the law that where evidence of experiments is offered to prove a fact already established by the testimony, neither its rejection nor its admission is error of which either party can complain. 22 C.J. p. 756, Section 845.

Other assignments are presented. They have all been considered, none of them are believed to show error, and are all overruled.

No reversible error appearing, the judgment should be affirmed, and it is so ordered.

Affirmed.

### On Motion for Rehearing.

 This was a suit by appellee, A. J. Manuel, for himself, and as next friend for his minor daughter, Marlene Manuel, against appellant for damages. The jury found for the minor in two items of $500 each. It also found in favor of appellee, A. J. Manuel, for a sum, which after a remittitur was filed, was $100. The judgment was rendered for A. J. Manuel for the entire amount of $1,100. The judgment should have been in favor of Marlene Manuel, the minor, by her next friend, A. J. Manuel, for $1,000 for the use and benefit of said minor, Marlene Manuel, and that the money, when collected, is to remain in court until the appointment and qualification of a regular guardian of the estate of said minor, authorized to receive said money; and judgment in favor of A. J. Manuel for the $100. The matter is called to our attention by appellant in its motion for rehearing. The judgment is hereby reformed so as to award, in consonance with the jury's finding, $1,000 to the minor, Marlene Manuel, by her next friend, A. J. Manuel, for the use and benefit of said minor, and that the money, when collected, shall remain in the registry of the court until the appointment and qualification of a regular guardian of the estate of said minor, authorized to receive said money; and, further judgment in favor of A. J. Manuel for $100, and as reformed is affirmed. Texas Cent. Ry. v. Stewart, 1 Tex.Civ.App. 642, 20 S.W. 962, writ refused; Gulf, C. & S. F. Ry. v. Styron, 66 Tex. 421, 424, 1 S.W. 161; Wilson v. Fisher, Tex.Civ.App., 105 S.W. 2d 304, writ refused.

The motion for rehearing in all other respects is overruled.